538 So.2d 909 (1989)
KALA INVESTMENTS, INC., and Travelers Insurance Company, Appellants,
v.
Isaac SKLAR; Isaac Sklar Associates & Architects, Inc.; Moises Chorowski; Moises Chorowski General Contractors, Inc.; Carlos Cordoso; and Realty Corporation of America, f/k/a Devco Aluminum Products, Inc., Appellees.
No. 86-3004.
District Court of Appeal of Florida, Third District.
January 31, 1989.
Rehearing Denied March 15, 1989.
*911 George, Hartz & Lundeen, Daniels and Hicks and Bambi G. Blum, Miami, for appellants.
Taylor, Brion, Buker & Greene and Arnaldo Velez, Lapidus & Frankel and David B. Haber, Smith & Supraski and Jose Smith, Miami, Richard Sherman, Fort Lauderdale, for appellees.
Before HUBBART, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
The central question presented by this case is whether Kala Investments, Inc., the present owner of an apartment building, may seek to recover from its co-defendants  among which are the architect and contractor who designed and erected the building  the amount paid in settlement with the plaintiffs, injured by a defect in the building, where, (a) Kala is not contractually or vicariously liable for the co-defendants' acts and cannot therefore seek indemnity, and (b) Kala and the persons involved in the design and construction of the building cannot share the common liability necessary to support Kala's claim of contribution because of the rule of Slavin v. Kay, 108 So.2d 462 (Fla. 1958). We hold that under the separate theory of equitable subrogation, Kala may seek to recover the amount paid to the plaintiffs and that the issue of whether the defect in the building was latent, as Kala claims, or patent, as the trial court summarily found, is an issue of fact to be resolved by a jury. Therefore, as to all co-defendants except one, we reverse the summary judgments entered *912 against Kala and remand the cause to the trial court for further proceedings.

I.
The case arose when a four-year-old child was injured after falling through a fourth-story screened window in his parents' apartment in the building owned by Kala. The child and his parents sued the following defendants:
(1) the building's present owners  Kala Investments, Inc.
(2) the present owner's insurer  Travelers Insurance Co.
(3) the original owner  Northeast Plaza Apartments, Inc.
(4) the architect  Isaac Sklar and Isaac Sklar Associates & Architects, Inc.
(5) the general contractor  Moises Chorowski and Moises Chorowski General Contractors, Inc.
(6) the window manufacturer/installer  Realty Corp. of America, f/k/a Devco Aluminum Products, and
(7) the building inspector  Carlos Cardoso.
The complaint alleged that the window and screen through which the child fell did not comply with the South Florida Building Code which requires that windows less than thirty-two inches from the floor have either a guardrail or like protective device in the form of solar screening which can withstand a load of twenty pounds per lineal foot applied in any direction. Without dispute, the window in the apartment was considerably less than thirty-two inches above the floor, had no guardrail, and the screen in the window was not nearly as strong as the Code required.
Although, as might be expected, the suit produced a flurry of claims by the co-defendants against one another, for present purposes it is enough to know that Kala cross-claimed against all joined defendants and filed a third-party complaint against the disjoined architect after the plaintiffs settled with and voluntarily dismissed the architect. Kala claimed that it was not at fault because the defect was not obvious to it and, alternatively, that, if at fault, others who had created the defects were at fault as well. Kala's crossclaims and third-party complaint invoked the usual rubrics of indemnity and contribution.
The trial court determined "as a matter of law that the condition complained of by the Plaintiffs, to wit: The placement of the window and absence of a shield guardrail or other safety device was patent," and further, that Kala's liability was not vicarious. Accordingly, it entered summary judgment for the original owner, architect, general contractors, window manufacturer-installer, and building inspector and dismissed with prejudice the plaintiffs' complaint and any crossclaim and third-party complaint pending against these defendants, including, of course, Kala's.[1] Kala then settled with the plaintiffs and appealed the judgment in favor of the co-defendants.[2]

II.

A.
The rule of Slavin v. Kay, 108 So.2d 462 (Fla. 1958), is that a building contractor is not liable to third parties for injuries that occur after the contractor has completed a building and it has been accepted by *913 the owner, if the defect is found to be a "patent" defect which the owner could have discovered and remedied. The rationale of the rule is that the owner:
"By occupying and resuming possession of the work . .. deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract, he is presumed to have made a reasonably careful inspection thereof, and to know of its defects, and if he takes it in the defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author."

Slavin v. Kay, 108 So.2d at 466 (quoting Casey v. Hoover, 114 Mo. App. 47, 63, 89 S.W. 330, 334 (1905)).
And although the Slavin rule has its critics, see Simmons v. Owens, 363 So.2d 142 (Fla. 1st DCA 1978); Edward F. Chadbourne, Inc. v. Vaughn, 491 So.2d 551 (Fla. 1986) (Adkins, J., dissenting), the rule remains alive and well, see Easterday v. Masiello, 518 So.2d 260 (Fla. 1988), and any news of its passing is greatly exaggerated.
Under the Slavin rule, since its advent expanded to limit the liability of engineers and architects as well as contractors, the original wrongdoer is not relieved of liability if the defect is found to be "latent," that is, not apparent by use of one's ordinary senses from a casual observation of the premises, Kagan v. Eisenstadt, 98 So.2d 370, 371 (Fla. 3d DCA 1957), or "hidden from the knowledge as well as from the sight and ... not [discoverable] by the exercise of reasonable care," Grall v. Risden, 167 So.2d 610, 613 (Fla. 2d DCA 1964). See also Simmons v. Owens, 363 So.2d 142 (Fla. 1st DCA 1978) (latent defect is one not discoverable by reasonable inspection); Maas Bros., Inc. v. Bishop, 204 So.2d 16 (Fla. 2d DCA 1967) (latent defect is one not discernible by the exercise of reasonable care); Milby v. Pace Pontiac, Inc., 176 So.2d 554 (Fla. 2d DCA 1965) (same).

B.
The co-defendants contend here, as they did below, that the defect was obvious because the placement of the window was "obviously" almost a foot lower than the code requirement and "obviously" did not contain a guard rail. But the test for patency is not whether the object itself or its distance from the floor was obvious to Kala, but whether the defective nature of the object was obvious to Kala with the exercise of reasonable care. Cf. Maas Bros., Inc. v. Bishop, 204 So.2d 16 (Fla. 2d DCA 1967) (slickness of metal strip constituted dangerous condition for purposes of determining latency, "not its location or very existence").
In the present case, had the screening on the window been of the specified strength, the low placement of the window and the absence of a guardrail would not have violated the code and would not thereby constitute a defect. Here, there was no evidence that Kala had actual knowledge of the code violation and no evidence that Kala had any special knowledge of screening or the ability of different types of screens to withstand pressure loads. Thus, there are genuine issues of fact to be resolved by a jury as to whether the low window without a guardrail was an obvious defect to Kala, and even if so, whether Kala, through the exercise of reasonable care, should have discerned that the screening in the window was not of the strength specified in the building code.[3]
*914 It is well established that it is "peculiarly a jury function to determine what precautions are reasonably required in the exercise of a particular duty of due care." Orlando Executive Park v. Robbins, 433 So.2d 491, 493 (Fla. 1983). Because reasonable persons could differ as to whether Kala could have discovered the defect through the exercise of reasonable care, summary judgment in favor of the co-defendants based on Slavin was improper. Compare Lynch v. Brown, 489 So.2d 65 (Fla. 1st DCA 1986) (jury question as to whether invitee perceived dangerous condition of stairway where railing height, balcony design and lighting failed to comply with building code) and Echols v. Hammet, 423 So.2d 923 (Fla. 4th DCA 1983) (jury question as to whether defect in road was observable) and Welch v. Auto Owners Ins. Co., 369 So.2d 449 (Fla. 1st DCA 1979) (jury question as to whether landlord should have known of defective thin glass window which violated code) and Milby v. Pace Pontiac, Inc., 176 So.2d 554 (Fla. 2d DCA 1965) (ordinarily, a jury question as to whether a defect is latent) with Seitz v. Zac Smith & Co., Inc., 500 So.2d 706 (Fla. 1st DCA 1987) (summary judgment affirmed where all parties agreed that missing peg was an obvious defect discoverable upon reasonable inspection) and Birch v. Capeletti Brothers, 478 So.2d 454 (Fla. 3d DCA 1985) (summary judgment affirmed upon conclusive evidence that defect in bridge roadbed was obvious to Department of Transportation) and Mori v. Industrial Leasing Corp., 468 So.2d 1066 (Fla. 3d DCA 1985) (dismissal of complaint against contractors affirmed because lack of parking area and barricades constituted a patent defect) and Bryant v. First Realty Investment Corp., 396 So.2d 1223 (Fla. 4th DCA 1981) (directed verdict affirmed upon clear evidence that defect was patent to owner where owner had taken special precautions to correct dangerous condition) and Grall v. Risden, 167 So.2d 610 (Fla. 2d DCA 1964) (summary judgment affirmed upon finding that tie-rod which extended eight to ten inches beyond a flower pot was an obvious, patent danger).

C.
Without dispute, Kala, as a landlord leasing premises for residential purposes, had a duty to "reasonably inspect" the premises prior to the tenant's occupancy. Mansur v. Eubanks, 401 So.2d 1328 (Fla. 1981). If it were found that Kala, acting as a reasonable person, could have discovered the defect by a reasonable inspection, then Kala would be charged with constructive knowledge of the defect. See Harvey Building, Inc. v. Haley, 175 So.2d 780 (Fla. 1965); Jenkins v. Brackin, 171 So.2d 589 (Fla. 2d DCA 1965).
The co-defendants contend that, to satisfy its duty to "reasonably inspect," Kala was required to hire an expert to inspect the building for code violations, and that, had Kala done so, the expert would have discovered the defect in the window. However, Carlos Cardoso, the structural engineer and special inspector for Kala's building  and, ironically, one of the co-defendants  had certified that the building complied with the building code. And, according to Kala's witness's deposition, "[g]enerally the owner can rely upon the building construction process application for permits, plans, designs and subsequent approval, and the Certificate of Occupancy." See also Singleton v. Collins, 40 Colo. App. 340, 574 P.2d 882 (1978) (approval by building inspector indicates compliance with ordinances and absent showing of owner's actual notice, owner not liable for injury-causing code defect).
Thus, because nothing in the record conclusively establishes that Kala was not entitled to rely upon Cardoso's representations and the issued Certificate of Occupancy, or that Kala was required to conduct a separate independent investigation to search the premises for code violations, see Henderson v. D'Annolfo, 15 Mass. App. 413, 446 N.E.2d 103 (1983) (purchaser entitled to rely on vendor's representation regarding *915 conformity with code requirements; no independent investigation requirement), Kala cannot be charged with constructive notice of the defective window.
Finally, issues of Kala's constructive knowledge and its duty to reasonably inspect are particularly unsuited to resolution by summary judgment, as issues of reasonable care and actual or implied knowledge are usually questions of fact for the jury. Harvey Building, Inc. v. Haley, 175 So.2d 780 (Fla. 1965) (knowledge and reasonable care); Kadushin v. Philmac Realty Corp., 128 So.2d 400 (Fla. 3d DCA 1961) (reasonable care). See also Welch v. Auto Owners Insurance Co., 369 So.2d 449 (Fla. 1st DCA 1979) (error to enter summary judgment for owner where it was possible that owner's reasonable inspection of premises would have indicated knowledge of defect).

D.
Despite our conclusion that the trial court was incorrect in finding, as a matter of law, that the defect was patent and that, accordingly, a summary judgment based on such a finding cannot stand, it is fundamental that the reasons which form the basis of a lower court's order or judgment are not controlling on appeal, and "even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it." Applegate v. Barnett Bank, 377 So.2d 1150, 1152 (Fla. 1979). See also Hester v. Gatlin, 332 So.2d 660 (Fla. 2d DCA 1976) (summary judgment affirmed even though trial court's stated reason for entering it was in error). It is undisputed in the record that the window manufacturer/installer, Realty Corp. of America, f/k/a Devco Aluminum Products [Devco], manufactured and installed the window pursuant to the plans and specifications of the architect on the project and that the window and screening were not themselves defective, but were defective only in that the window was placed below the required height and lacked a guardrail or special type screening. Because Devco had nothing to do with the placement of and specifications for the window or the type of screening, Devco could not have been held liable to the plaintiffs, and thus cannot be liable to Kala, under any theory. We therefore affirm the summary judgment for Devco.

III.
The co-defendants further attempt to defend the summary judgment on the ground that because the apartment building was built and certified for occupancy in 1972 and the plaintiffs' complaint was not filed until 1981, both the plaintiffs' and Kala's actions against them are barred by Section 95.11(3)(c), Florida Statutes (1985). While it is true that the section provides for a four-year limitations period on actions "founded on the design planning, or construction of an improvement to real property, with the time running from ... the date of the issuance of a certificate of occupancy," significant here is its further provision that "when the action involves a latent defect, the time runs from the time the defect is discovered or should have been discovered with the exercise of due diligence."
The patent flaws in the co-defendants' argument  readily discernible and easily discoverable by the exercise of reasonable care  are these: First, if, as we have already determined, reasonable persons could differ as to whether the defect was patent or latent, then summary judgment based on the statute of limitations  which also turns on the patency-latency determination  is as inappropriate as summary judgment based on the rule of Slavin v. Kay. If the factfinder determines that the defect was patent, then the co-defendants will prevail under Slavin v. Kay, and the statute of limitations' defense will be moot; if the factfinder determines that the defect was latent, then neither Slavin v. Kay nor the statute of limitations will stand in Kala's way. Second, the statute of limitations period does not begin to run on a claim for indemnity or contribution until the right to bring that claim is established  either when a judgment has been *916 entered, or when the defendant has paid the claim.[4]A. Patient Care Center v. Ted Hoyer & Co., Inc., 498 So.2d 1381 (Fla. 4th DCA 1986) (contribution); Castle Construction Co. v. Huttig Sash & Door Co., 425 So.2d 573 (Fla. 2d DCA 1982) (indemnity); Fireman's Fund Insurance Co. v. Rojas, 409 So.2d 1166 (Fla. 3d DCA 1982) (indemnity); Showell Industries, Inc. v. Holmes County, 409 So.2d 78 (Fla. 1st DCA 1982) (contribution). This is so despite the fact that the statute of limitations has run on the original cause of action at the time the contribution claim is filed, Showell Industries, Inc. v. Holmes County, 409 So.2d at 78, and despite the fact that the statute of limitations had run on the original cause of action when it was filed. See Home Insurance Co. v. Advance Machine Co., 500 So.2d 664, 669 (Fla. 1st DCA 1986) ("where a statute of limitations prevents a plaintiff from recovering from one defendant and the plaintiff recovers from another defendant, that other defendant is able to seek contribution from the otherwise protected defendant."); Corning Glass Works v. Puerto Rico Water Resources Authority, 396 F.2d 421 (1st Cir.1968) (third-party action for contribution from third-party defendant not barred even though original action by plaintiff against third-party defendant was time barred); Keleket X-ray Corp. v. United States, 275 F.2d 167, 169 (D.C. Cir.1960) (to bar crossclaim for contribution where statute of limitations had run as to one defendant on the original action "would mean that a suit under the Tort Claims Act could be barred before it came into existence.").

IV.

A.
Thus far we have concluded, among other less significant things, that because the question of the patency or latency of the defect is a question of fact for the jury to resolve, a summary judgment resolving the question as a matter of law was incorrect. But what if the factfinder concludes, as Kala suggests it will, that the defect was latent? While Kala would thus be free of all liability under Slavin v. Kay, its alternative claims of contribution and indemnity against the wrongdoing co-defendants would still not lie. Kala would have no cause of action for contribution against the co-defendants for the settlement money because one totally without liability for a plaintiff's injuries is not a joint tortfeasor entitled to recover. See West American Insurance Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986) (insurer found totally without liability and not entitled to contribution from tortfeasor because unable to prove common liability).[5] Likewise, Kala would have no claim for indemnification against the co-defendants. While a finding that the defect was latent would satisfy the requirement of Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979), that the party seeking indemnity be without fault, the separate requirement of Houdaille that the relationship between *917 Kala and its co-defendants be such that Kala is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the co-defendants would not be satisfied.

B.
Is Kala, thus caught in the "either/or bind" of Slavin v. Kay, without recourse? We think not.
In our view, the doctrine of equitable subrogation provides the avenue for Kala to seek recompense for the settlement money it paid to the plaintiffs. "Equitable" subrogation is a creature of equity which was developed to afford relief "when one person has satisfied the obligations of another and equity compels that the person discharging the debt stand in the shoes of the person whose claim has been discharged, thereby succeeding to the rights and priorities of the original creditor." Eastern National Bank v. Glendale Federal Savings and Loan Association, 508 So.2d 1323, 1324 (Fla. 3d DCA 1987). The policy behind the doctrine is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge. Id. See United States Fidelity & Guaranty Co. v. Bennett, 96 Fla. 828, 119 So. 394 (1928). The doctrine is then a part of the universe usually spoken of as being inhabited by only indemnity or contribution.
Because the application of equitable subrogation depends upon the facts and circumstances of each case, United States Fidelity & Guaranty Co. v. Bennett, 96 Fla. 828, 119 So. 394, "having for its basis the doing of complete and perfect justice between the parties without regard to form," Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 551, 156 So. 116, 119 (1934), there is no general rule or test for its invocation. However, one important prerequisite to its application is that the party who made the payment must have some right or interest of his own to protect and must not be a mere volunteer acting without obligation. Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916).
There is substantial support for Kala's claim that it has a cause of action against the co-defendants for equitable subrogation. In West American Insurance Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986), an injured passenger brought suit against both West American and Yellow Cab. West American, much like Kala, settled with the passenger and then brought a contribution action against Yellow Cab. When the jury returned a verdict finding Yellow Cab one hundred percent responsible, the trial court concluded that West American's claim for contribution must fail because there was no common liability between the parties. In reversing the judgment for Yellow Cab and allowing West American to amend its pleadings after trial to add a cause of action for subrogation, the court stated: "The right of subrogation is not necessarily confined to those who are legally bound to make payments, but extends as well to persons who pay the debt in self protection, since they might suffer loss if the obligation is not discharged." 495 So.2d at 207. Because West American was a named defendant in the lawsuit and had settled to protect its own interests, it was considered not a volunteer for equitable subrogation purposes.[6] And because West American was found not to be *918 at fault, and yet had paid the debt in full which should have been paid by Yellow Cab, the court found that West American had a cause of action for legal subrogation.
Similarly, in Rawson v. City of Omaha, 212 Neb. 159, 322 N.W.2d 381 (1982), a defendant was entitled to equitable subrogation from the city after paying settlement money to several plaintiffs. Because the city's negligence was ultimately found to be the sole cause of the accident, the plaintiff was unable to recover from the city under a theory of contribution. In finding that the defendant was not a "volunteer" who would be precluded from subrogation, the court stated:
"One should have the right to settle a lawsuit in which there is a reasonable doubt concerning liability and not be required to incur all of the expenses of litigation to conclusion before being entitled to seek subrogation. To hold otherwise would be to discourage settlements and to promote litigation, a concept which should be discouraged by the courts. We believe it is not inappropriate to hold that one who is sued for alleged negligence and who, in an effort to save his property, including the expenditure of attorney fees, enters into a reasonable settlement is not a volunteer and is entitled to seek reimbursement under the doctrine of equitable subrogation."

Rawson v. City of Omaha, 322 N.W.2d at 385.
And in Newcomer v. Masini, 45 Wash. App. 284, 724 P.2d 1122 (1986), a defendant who settled with the plaintiff and was later absolved of all liability was held to be entitled to recover the settlement money under a theory of subrogation from the third-party defendant found solely responsible. The court recognized that the defendant in a lawsuit is potentially liable for damages until a case is decided. Therefore, the defendant who settles is not a volunteer and is entitled to recover through subrogation.
Kala's situation is much the same as that of the defendants who were found to be entitled to equitable subrogation in West American, Rawson, and Newcomer. First, Kala settled with the plaintiffs after the trial court, finding that the defect was patent and therefore Kala's responsibility, had entered summary judgment in favor of the co-defendants. At that point, Kala was faced with sole responsibility for the plaintiffs' loss and was clearly protecting its interests in settling the case.[7] Second, as we have noted, if a jury determines that the defect was latent and thus completely absolves Kala of liability for the plaintiffs' injury, Kala will be unable to seek contribution or indemnity from the co-defendants, some or all of whom are the only possible wrongdoers.
It appears, therefore, that the doctrine of equitable subrogation is especially suited for this case.[8] If Kala is absolved of liability by a latency finding, and yet left to bear *919 the financial responsibility for the plaintiffs' loss after being found not at fault, the result would be highly inequitable, and the true wrongdoers would be unjustly enriched. It is precisely this result that the doctrine of equitable subrogation was fashioned to remedy.[9]

V.
The summary judgment for Realty Corp. of America, f/k/a Devco Aluminum Products, is affirmed. The summary judgments for Isaac Sklar and Isaac Sklar Associates & Architects, Inc., Moises Chorowski and Moises Chorowski General Contractors, Inc., and Carlos Cardoso are reversed. The cause is remanded to the trial court with leave to Kala Investments, Inc. and its insurer, Travelers Indemnity Company, to amend their crossclaims and third-party complaints to request relief by way of equitable subrogation. The trial court shall thereafter conduct further proceedings consistent herewith.
Affirmed in part; reversed in part, and remanded.
NOTES
[1] This was the second attempt by the original owner, general contractors, window installer, and building inspector to gain summary judgment. On the first try, the previous trial judge granted summary judgment but later vacated it on rehearing, resulting in an unsuccessful petition for certiorari. Chorowski v. Kala Investment, Inc., 482 So.2d 356 (Fla. 3d DCA 1986) (table).
[2] All proceedings in the trial court having been concluded, the judgment is quite obviously appealable. Of course, since the judgment also exonerated the co-defendants from any liability to the plaintiffs, it would have been appealable under Holton v. Wilson, 482 So.2d 341 (Fla. 1986).

Kala is joined in the appeal by its insurer, Travelers Insurance Company, against whom judgment was also entered. Kala and Travelers will be referred to throughout this opinion under the unified name, Kala. Northeast Plaza Apartments, Inc. was originally joined as an appellee, but was voluntarily dismissed from this appeal pursuant to Florida Rule of Appellate Procedure 9.350.
[3] The trial court had before it the usual clash of experts' affidavits and depositions. The co-defendants' expert opined that the windows were obviously too low and that the screens  designed to protect against only insects  were old, could be checked easily for corrosion, and were in such an obviously decrepit state that there was no way they could satisfy the code. Kala's expert stated that the defect in the window and screen would be patent to only those persons  e.g., architects, building officials, and contractors  regularly involved in the implementation of the code:

"a defect of the magnitude of the subject window would not be patent to anyone other than one who is familiar with the South Florida Building Code and is involved in its implementation on a regular basis.
"[T]his particular defect is of a sort which would be latent to all observers other than the aforementioned."
and that
"[a] person unfamiliar with weights and loads and who does not evaluate them on a daily basis could not conclude, simply by looking at a screen, that it could not meet the code requirement of withstanding a force or weight of twenty pounds per linear foot."
[4] As will be seen infra, even a ruling favorable to Kala on the patency-latency issue will not permit Kala to pursue an indemnity or contribution claim. However, as will also be seen, Kala is entitled to pursue an equitable subrogation claim. Such a claim  seeking as it does the same type of relief as its more common counterparts  will be controlled either by the same statute of limitations, see Newcomer v. Masini, 45 Wash. App. 284, 724 P.2d 1122 (1986), or by the doctrine of laches, which looks to the provisions of the most closely-related statute of limitations. See Wadlington v. Edwards, 92 So.2d 629 (Fla. 1957).
[5] Florida's Uniform Contribution Among Tortfeasors Act, § 768.31(2)(a), Fla. Stat. (1987), provides that: "[W]hen two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them." In order for Kala to seek contribution for the settlement money under the Act, a "common liability" must exist between Kala and the co-defendants, and Kala must show that the settlement amount paid was reasonable. Home Insurance Co. v. Advance Machine Co., 500 So.2d 664 (Fla. 1st DCA 1986). If the court finds that the defect is latent, the co-defendants' original negligence would be the proximate cause of the injury and Kala would be relieved from liability. Slavin v. Kay, 108 So.2d 462. Thus there would be no "common liability" and Kala could not seek contribution from the co-defendants.
[6] See also Trueman Fertilizer Co. v. Allison, 81 So.2d 734 (Fla. 1955), in which the court held that a plaintiff who paid prior tax liens on certain property in which it had an interest was protecting that interest and was thus not acting as a volunteer. In holding that the plaintiff was entitled to an equitable remedy against the person who should have paid the taxes, the court noted that:

"[I]f [the party making payment] has any palpable interest which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as a creditor could. It would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out he had no interest to protect."
81 So.2d at 736.
[7] The plaintiffs' cause of action against Kala was not founded on Kala's "design, planning, or construction of an improvement to real property," and thus Section 95.11(3)(c), Florida Statutes (1985), could not serve to time bar the plaintiffs' claim as to Kala. Instead, the plaintiffs' cause of action against Kala was based upon Kala's alleged negligence in failing to discover and remedy the defective window and screen and thus the four-year limitations period for negligence actions in Section 95.11(3)(a), Florida Statutes (1981), applies to Kala. Because the statute of limitations for negligence actions does not began to run until the date of the injury, see Department of Transportation v. Soldovere, 519 So.2d 616 (Fla. 1988), the plaintiffs' complaint, which was filed only one month after the injury, was clearly within the limitations period as to Kala.
[8] While it is true that Kala raised the doctrine of equitable subrogation for the first time in its reply brief and that generally an issue raised for the first time in a reply brief will not be considered on appeal, Zerwal v. State Farm Mutual Automobile Insurance Company, 332 So.2d 645 (Fla. 3d DCA 1976), a cause of action for equitable subrogation is fully supported by the record. See Hart Properties, Inc. v. Slack, 159 So.2d 236 (Fla. 1964) (where record indicates existence of valid cause of action or defense not pleaded, entry of summary judgment must be with leave to amend); Purinson v. Antenna Specialists Co., 408 So.2d 617 (Fla. 3d DCA 1981) (same). See also West American Insurance Co. v. Yellow Cab Co., 495 So.2d 204 (Fla. 5th DCA 1986) (judgment reversed to allow insurer to add cause of action for equitable subrogation where all the elements of subrogation were presented at trial). Furthermore, the co-defendants cannot be prejudiced by a decision that Kala is entitled to label its claim "equitable subrogation" (if it needs labeling at all) because Kala's claim of subrogation is not dependent upon new facts and is identical to its contribution and indemnity claims. See Newcomer v. Masini, 45 Wash. App. 284, 724 P.2d 1122 (1986). By whatever name  equitable subrogation, indemnity, or contribution  Kala seeks reimbursement from the co-defendants of the money that it paid to the plaintiffs because it was the co-defendants, not Kala, who were actually responsible for the plaintiffs' injuries.
[9] Obviously, in the trial between Kala and the co-defendants, the co-defendants continue to have the right to raise as an issue the reasonableness of the settlement, that is, whether Kala paid too much.