609 So.2d 658 (1992)
TRANSPORT INTERNATIONAL POOL, INC., for Use and Benefit of the HOME INSURANCE COMPANY, Appellant,
v.
PAT SALMON & SONS OF FLORIDA, INC., etc., et al., Appellees.
Nos. 90-2710, 91-0711, 91-1646 and 91-2263.
District Court of Appeal of Florida, Fourth District.
November 18, 1992.
Motion for Rehearing, Rehearing, Clarification and Certification Denied January 5, 1993.
*659 Jay Cooper of Goldberg, Goldstein & Buckley, P.A., Ft. Myers, for appellant.
John P. Wiederhold of Wiederhold, Moses, Bulfin & Rubin, P.A., West Palm Beach, for appellee  Pat Salmon & Sons of Florida, Inc.
Dennis A. Vandenberg and Gene Brandt of Peterson & Bernard, West Palm Beach, for appellee  United States Fire Ins. Co.
Larry Klein of Klein & Walsh, P.A., and Lytal & Reiter, West Palm Beach, for Intervenors  Joseph P. Metzger and Metzger & Sonneborn, P.A.
Motion for Rehearing, Rehearing En Banc, Clarification and Certification Denied January 5, 1993.
HERSEY, Judge.
Transport International Pool, Inc. ("TIP"), is in the business of leasing trailers. TIP is insured by The Home Insurance Co. ("HOME").
Appellee, Pat Salmon & Sons of Florida, Inc. ("SALMON"), is in the tractor/trucking business and is insured by both appellee, *660 United Southern Assurance Company ("UNITED"), and appellee, United States Fire Insurance Co. ("U.S. FIRE").
Salmon leased a tractor from TIP under a written lease agreement which required Salmon to indemnify TIP and hold it harmless from and against any damages arising out of the operation or condition of the trailer. At the time of leasing, and at least twice thereafter, the trailer was inspected and found to be in safe, sound, and workable condition.
While operating the tractor/trailer rig, Robert McClure, an employee of Salmon, negligently caused an accident which seriously injured Gerald Breit. Breit then sued TIP, Salmon, and McClure. During the course of the litigation, counsel for Breit made a $1,500,000.00 time demand to settle the action against all defendants. The claim was ultimately settled for $1,150,000.00, consisting of $750,000.00 for Salmon from United, its policy limits, and $400,000.00 for TIP from Home.
According to TIP, its contribution to the settlement through Home was made with the understanding that TIP would be liable for its own active negligence and also by the application of the doctrine of respondeat superior. However, post-settlement discovery and investigation revealed that TIP could not have been held legally liable under either theory. Consequently, TIP proceeded to bring three actions in the trial court seeking indemnification from Salmon and its insurers pursuant to the terms of the trailer lease agreement. All three actions culminated in summary judgments adverse to TIP, resulting in four separate appeals which have now been consolidated for disposition here.
The summary judgments and the final judgments consequent thereon in appeals numbered 91-0711, 91-1646 and 91-2263 may be sustained only if the final judgment in appeal 90-2710 is affirmed because the latter three cases rely upon the doctrines of res judicata and collateral estoppel for resolution of issues which otherwise would constitute genuine, material issues to be resolved by the fact-finder. For that reason, we treat in some depth only the issues and arguments presented in the main appeal.
We note initially that the order granting Salmon's motion for summary judgment does not specify the basis for the trial court's ruling. Examination of the transcript leads to the conclusion that the basis was either the purported invalidity of the "hold harmless" language of the lease, or the fact that TIP acted as a volunteer in making the $400,000.00 contribution to the settlement.
Appellees argue, and we agree, that an indemnity agreement which indemnifies against the indemnitee's own active negligence must so state in clear and unequivocal language. Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co., 374 So.2d 487 (Fla. 1979). We need not put the language of the present lease under scrutiny, however, because this principle is applicable only to situations where the indemnitee and indemnitor are found to be jointly negligent or at fault, or where the damages are occasioned solely by the indemnitee's own negligence or fault. See Charles Poe Masonry; Mitchell Maintenance Systems, a Div. of Lift-a-Loft Corp. v. Florida Dept. of Transp., 442 So.2d 276 (Fla. 4th DCA 1983). Because there is no evidence in this record that TIP, the indemnitee, was guilty of negligence, the foregoing principle could not be invoked to invalidate the indemnity provision. There being no other basis to find it invalid, we must find that it is valid and enforceable. That does not end the inquiry, however. The remaining questions are whether the indemnity provision applies in this case and, if so, whether there is a viable defense to it.
The relevant indemnity and "hold harmless" provisions are found in sections 6.A.(d), 6.C., and 16 of the trailer lease agreement:
6. A. Lessee hereby specifically indemnifies Lessor, and agrees to hold Lessor harmless against all loss and damages Lessor may sustain or suffer because of:
* * * * * *

*661 (d) The death of, injury to, or damage to the property of, any third person as a result of, in whole or in part, the use or condition of said equipment while in the custody, possession, or control of Lessee... .
* * * * * *
C. The Lessee also agrees to provide comprehensive general liability coverage including contractual coverage for hold harmless agreements contained herein, and certificates of insurance required to be furnished hereunder should so state.
* * * * * *
16. Lessee will indemnify and save Lessor harmless from any loss, cost or expense of any nature, and from any liability to any person on account of any damage to person or property arising out of any failure of Lessee to comply in any respect with and perform any of the requirements and provisions of this lease.
(Emphasis supplied.) Although there has been "injury to ... [a] third person as a result of, in whole or in part, the use or condition of said equipment while in the custody, possession, or control of Lessee," TIP nevertheless has failed to satisfy that significant portion of the indemnity clause which provides that Salmon as lessee "specifically indemnifies Lessor [TIP], and agrees to hold Lessor harmless against all loss and damages Lessor may sustain or suffer" because of such third-person injury. As Salmon argues, under the facts and the applicable case law, TIP could not have been found to be legally liable for the incident or damages that were the subject of Breit's personal injury claim. TIP concedes that it could have no vicarious liability as the owner of a trailer under the dangerous instrumentality doctrine, yet argues that the word may (from the phrase "may sustain or suffer") is defined as "possibility," and thus, nothing in the lease agreement states that TIP's exposure must flow from legal probability.
Breit's complaint alleged active and direct negligence on the part of TIP; however, TIP recognizes that there is no evidence of any active negligence on its part and concedes that it could have no vicarious liability as the owner of the leased trailer. TIP could not therefore be held legally liable for Breit's injuries. Accordingly, TIP could not have sustained or suffered any loss or damage as a result of the actions/omissions of its lessee, Salmon (or its agents/employees), and thus, strictly speaking, there is no possibility that TIP might sustain or suffer the loss or damages referred to in section 6.A.(d) of the trailer lease agreement. Based on the foregoing analysis, even though section 6.A.(d), the main provision under which TIP seeks contractual indemnity from Salmon, is clear and unambiguous and therefore enforceable as a matter of law, TIP f/u/b/o HOME is not entitled to contractual indemnity because the undisputed facts and applicable law reveal that TIP could not have been found directly or vicariously liable to the underlying plaintiff, Gerald Breit. Thus, TIP does not fall within the scope of section 6.A.(d) of the agreement. See CSX Transp., Inc. v. Becker Sand & Gravel Co., 576 So.2d 902 (Fla. 1st DCA 1991).
Although it is not certain whether the trial court granted Salmon's motion for summary judgment based on the foregoing reasoning, the trial court was nevertheless correct in its decision. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979). We deem appellees' argument that TIP should be denied contractual indemnity because its contribution to the settlement was not legally required and thus was voluntarily made, to be subsumed by our resolution of the preceding issue. Accordingly, we do not treat that argument here.
TIP next argues that the final judgment, which was entered pursuant to the trial court's order granting Salmon's motion for summary judgment, should be reversed based on the principles of equitable subrogation, mistake and/or equitable estoppel because these equitable principles support TIP's cause of action against Salmon.
Of the three equitable arguments raised by TIP, only the one based on the doctrine *662 of equitable subrogation has possible application to the facts of this case. As discussed above, since TIP is not entitled to contractual indemnity under the trailer lease agreement, the question becomes whether, under the facts and circumstances of this case, TIP may maintain a separate cause of action against Salmon under the doctrine of equitable subrogation. In Underwriters At Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 704 (Fla. 1980), the supreme court stated:
Subrogation is an equitable doctrine whereby the initial tortfeasor/defendant is placed "in the shoes" of the plaintiff. It is a legal device "founded on the proposition of doing justice without regard to form, and was designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another... ."
(Citations omitted) (emphasis added). Although it cannot be said from the facts of this case that TIP was "required" to make the $400,000.00 settlement payment to the underlying plaintiff, it is clear that HOME made the payment on behalf of TIP, its insured, based on its belief at the time of settlement negotiations (which turned out to be mistaken) that TIP/HOME was legally liable to the underlying plaintiff.
In West American Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986), rev. denied, 504 So.2d 769 (Fla. 1987), the court relied on a slightly different definition of legal or equitable subrogation from a 1916 Florida Supreme Court opinion:
Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. Subrogation arises by operation of law, where one having a liability or a right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid. This is called "legal subrogation."
Id. at 206 (quoting Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916). The Fifth District in West American went on to hold:
Legal subrogation, then, is a creature of equity that does not depend on contract, but which follows as a legal consequence of the acts and relationship of the parties. The doctrine is based on the policy that no person should be unjustly enriched by another's loss, and may be invoked wherever justice demands its application, irrespective of technical legal rules.
Subrogation in equity is not available to a mere volunteer or stranger who, without any duty or obligation to intervene and without being so requested, pays the debt of another. The right of subrogation is not necessarily confined to those who are legally bound to make payments, but extends as well to persons who pay the debt in self protection, since they might suffer loss if the obligation is not discharged.
495 So.2d at 207 (citations omitted) (emphasis added). See also Kala Investments, Inc. v. Sklar, 538 So.2d 909 (Fla. 3d DCA) (the court emphasized that the party who made the payment must have done so to protect some right or interest of his own and must not have acted without obligation), rev. denied, 551 So.2d 460, 461 (Fla. 1989).
In West American the plaintiff sued two defendants, A and B. Although defendant B refused to negotiate, the plaintiff negotiated a settlement with defendant A and executed a release of all claims against both defendants. In defendant A's contribution action against defendant B, the jury found that defendant B was 100% responsible for the plaintiff's injuries. On appeal, the Fifth District found that although contribution under the Uniform Contribution Among Tortfeasor's Act was not allowed because the jury found that defendant A was not a tortfeasor, the court granted relief to defendant A based on the doctrine of equitable subrogation. The court held:
In the instant case, a cause of action for legal subrogation was fully supported by the evidence presented at trial. To protect itself, and not as a volunteer, *663 [defendant A] as insurer paid a debt in full which in equity should have been paid by [defendant B]. The jury found that the payment was reasonable and that [defendant B] was 100% at fault. Not permitting a recovery in this case because [defendant A] was found not to be at fault for the accident produces an inequitable and absurd result and would unjustly enrich [defendant B].
West American, 495 So.2d at 207.
Similarly, the court in Kala Investments, relying in part on West American, held that a codefendant (Kala) who sought to recover from its codefendants the amount paid in settlement with the plaintiffs where the codefendant was not liable for the codefendants' acts, thereby precluding indemnity as well as contribution, could seek to recover the amount paid to plaintiffs under the doctrine of equitable subrogation. The court concluded:
It appears, therefore, that the doctrine of equitable subrogation is especially suited for this case. If Kala is absolved of liability by a latency finding, and yet left to bear the financial responsibility for the plaintiffs' loss after being found not at fault, the result would be highly inequitable, and the true wrongdoers would be unjustly enriched. It is precisely this result that the doctrine of equitable subrogation was fashioned to remedy.
Kala, 538 So.2d at 919 (footnotes omitted). In reaching its decision, the Kala court also relied on Rawson v. City of Omaha, 212 Neb. 159, 322 N.W.2d 381 (1982), and Newcomer v. Masini, 45 Wash. App. 284, 724 P.2d 1122 (1986). The court in Newcomer held that a defendant who settled with the plaintiff and was later absolved of all liability was entitled to recover through subrogation the settlement money from the third party defendant who was found to be solely responsible. The court reasoned that because a defendant is potentially liable for damages until a case is decided, the settling defendant is not a volunteer and therefore is entitled to recover. The court in Kala quoted the following from Rawson:
One should have the right to settle a lawsuit in which there is a reasonable doubt concerning liability and not be required to incur all of the expenses of litigation to conclusion before being entitled to seek subrogation. To hold otherwise would be to discourage settlements and to promote litigation, a concept which should be discouraged by the courts. We believe it is not inappropriate to hold that one who is sued for alleged negligence and who, in an effort to save his property, including the expenditure of attorney's fees, enters into a reasonable settlement is not a volunteer and is entitled to seek reimbursement under the doctrine of equitable subrogation.
Kala, 538 So.2d at 918 (quoting Rawson, 381 N.W.2d at 322) (emphasis added).
Based on the foregoing authorities and reasoning, we conclude that TIP should be permitted to amend its complaint to state a cause of action against Salmon for equitable subrogation to recover TIP's settlement payment to the underlying plaintiff, Gerald Breit. We also reiterate the basis for this conclusion in summary form. At the time of settlement negotiations TIP/HOME was under the mistaken belief that it had exposure because of Breit's active negligence allegations against it. Because TIP was guilty of no active negligence and neither could it be found vicariously liable, Salmon (and its agents/employees) was solely responsible for Gerald Breit's injuries. TIP, as Salmon's codefendant in the underlying lawsuit, should be entitled to seek its settlement payment from Salmon under the doctrine of equitable subrogation in order to avoid an inequitable result and so that Salmon, which was solely at fault, would not be unjustly enriched. Accordingly, we find that the doctrine of equitable subrogation supports the maintenance of TIP's cause of action against Salmon.
TIP did not plead equitable subrogation in its amended complaint for indemnity against Salmon, and TIP did not raise this argument in its Memorandum of Law in opposition to Salmon's Motion for Summary Judgment. In Kala, the court allowed an equitable subrogation cause of *664 action where appellant raised the doctrine of equitable subrogation for the first time in its reply brief where that cause of action was fully supported by the record and its codefendants would not be prejudiced thereby because the subrogation claim was not dependent upon new facts and was identical to appellant's contribution and indemnity claims. 538 So.2d at 918-19 n. 8. That is the situation in the present case.
One significant issue, inter alia, that may yet be dispositive of this case is whether Salmon was an insured under the HOME policy. While this issue was strenuously contested in the briefs, it was never tried to conclusion in the trial court. We therefore deem it premature to comment on the various arguments made on both sides of that issue here.
We reverse each of the final judgments on appeal and remand to allow TIP f/u/b/o HOME to amend its amended complaint against Salmon to request relief by way of equitable subrogation and for such further proceedings in each of the actions as may be necessary and appropriate in view of this opinion.
REVERSED AND REMANDED.
WILLIAM C. OWEN, Jr., Senior Judge, concurs.
ANSTEAD J., dissents without opinion.