609 So.2d 757 (1992)
Ray C. HOUK, Jr. and Carolyn M. Houk, Appellants,
v.
MONSANTO COMPANY, Appellee.
No. 92-502.
District Court of Appeal of Florida, First District.
December 7, 1992.
*758 Louis K. Rosenbloum and Stephen H. Echsner of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., for appellants.
William H. Clark of Clark, Partington, Hart, Larry, Bond, Stackhouse & Stone, Pensacola, for appellee.
ALLEN, Judge.
Ray C. Houk, Jr. and Carolyn M. Houk appeal the trial court's final summary judgment in favor of Monsanto Company. Because genuine issues of material fact preclude summary judgment, we reverse.
On January 11, 1989, Ray Houk was employed by Fluor Daniel, an independent contractor engaged in building a chemical storage tank on property belonging to Monsanto Company. Houk was injured when he stepped into a "French drain" located on the Monsanto property. The French drain in this case is an 18 to 24 inch vertical pipe buried in the ground with a 2 to 3 inch lip above ground, and into which drained steam condensates from adjacent buildings' steam heating systems. The temperature of the steam condensate as it falls from drainage pipes into the French drain is approximately 180 degrees. Steam is generally observed at the drain opening, and vapor also rises from the hot water collecting in the drain on a cold day. The Monsanto property had 80 to 100 French drains located upon it, which either had covers or were filled with slag (rocks) to ground level. The French drain that Houk stepped into, however, had neither.
Although Monsanto retained responsibility for inspection and maintenance of the French drains, the contract between Fluor Daniel and Monsanto provided that Fluor Daniel was responsible for all aspects of the construction, including safety precautions and the safety of its employees. Harold Brown, the Fluor Daniel foreman, had warned his construction crew that the steam was a hazard and instructed a crew to place barricade tape around the drain area prior to the date of Houk's accident. However, the barricade tape was not in place at the time of the accident. Although the employees, including Houk, were apparently aware of the presence of the drain, the evidence was conflicting as to *759 whether they knew the drain was uncovered. Brown selected a site immediately adjacent to the French drain to stack lumber for the construction project. The accident occurred when Houk went to the lumber pile and stepped into the French drain as he was bending down to get lumber. Houk's left leg sustained severe burn wounds.
Houk filed suit against Monsanto, alleging negligent maintenance of the drain and a failure to warn of its presence and dangers. The trial court granted Monsanto's motion for summary judgment, finding that "the danger of the French drain was open and apparent, ... the independent contractor and its employees had observed the drain, had taken note of the danger posed by it, and had undertaken to keep its employees away from it, ... [and accordingly,] the defendant was under no duty to further warn the independent contractor or its employees of the danger posed by the French drain."
The parties agree that this case is controlled by Mozee v. Champion International Corporation, 554 So.2d 596 (Fla. 1st DCA 1989), review denied, 564 So.2d 487 (Fla. 1990), wherein we summarized the applicable duties owed by a property owner to an employee of an independent contractor:
It is well established in Florida law that an owner who hires an independent contractor is generally not liable for injuries sustained by that contractor's employees.
There are, however, two principal exceptions to this rule. First, an owner may be held liable if he interferes or meddles with the job to the extent of assuming the detailed direction of it, and thus become[s] the master of the independent contractor's employee. Second, if the owner has been a passive nonparticipant, in order to impose liability one or more specific identifiable acts of negligence, i.e., acts either negligently creating or negligently approving the dangerous condition resulting in the injury or death to the contractor's employee, must be established.
A person who is having work done on his premises by an independent contractor and has actual or constructive knowledge of latent or potential dangers on the premises owes a duty to give warning of, or use ordinary care to furnish protection against, such dangers to employees of the contractor and subcontractor who are without actual or constructive notice of the dangers.
The duty of the owner to give notice and warn of a dangerous condition known to the owner but unknown to the independent contractor and its employees is discharged by notice given to supervisory personnel by [sic] the independent contractor.
Id. at 597-98 (citations omitted).
The first question that arises in this case is whether the uncovered and unfilled French drain presented a latent defect. A latent defect is one that is "not apparent by use of one's ordinary senses from a casual observation of the premises." Kala Inv., Inc. v. Sklar, 538 So.2d 909, 913 (Fla. 3d DCA), review denied, 551 So.2d 460 (Fla. 1989), and 551 So.2d 461 (Fla. 1989). There appears to be no question but that all the employees of Fluor Daniel, including Houk, were aware of the location of the French drain at issue. However, contrary to what Monsanto seems to argue, it was not the French drain per se that created the dangerous condition, but rather its uncovered and unfilled state that caused the injury. After all, had Houk stepped onto a covered drain or one filled to ground level with slag, he would not have stuck his leg into nearly boiling water and sustained severe burns. Thus, the real question is not whether Houk knew the drain was there, but whether a reasonably prudent person exercising due care would have observed that the drain was uncovered and unfilled. See Kala Inv., 538 So.2d at 913 (test for patency is not whether the object itself was obvious, "but whether the defective nature of the object was obvious"); Maas Bros., Inc. v. Bishop, 204 So.2d 16, 20 (Fla. 2d DCA 1967) (slickness of metal strip on step was the alleged latent defect, rather than step's location or very existence).
*760 The record testimony gives rise to conflicting conclusions. On the one hand, two employees testified that they had observed that the drain was not filled with slag or covered. Thus, one could conclude that if those employees discovered the defect, it must be readily observable and thus a patent defect. On the other hand, however, other testimony indicated that steam hung over the drain, obscuring its visibility. Houk, Houk's direct supervisor, and Brown all testified that they had not observed that the drain was unfilled and uncovered. Thus, another reasonable inference is that the uncovered and unfilled condition of the drain was not discoverable by "casual observation."
Summary judgment should only be granted where there is a complete absence of any genuine issue of material fact. E.g. Moore v. Morris, 475 So.2d 666 (Fla. 1985). Where the evidence of a defect reasonably gives rise to conflicting inferences, a question of fact is present and summary judgment is inappropriate. See Kala Inv., 538 So.2d at 913 (genuine issue of material fact as to whether low window without a guardrail was an obvious defect); Bryant v. Lucky Stores, Inc., 577 So.2d 1347, at 1349 (Fla. 2d DCA 1990) (summary judgment improper where reasonable men could differ as to whether store patron should have seen speed bump); cf. Maas Bros., 204 So.2d at 20 (whether slickness of metal strip "was discernible upon casual observation of the premises was a question properly submitted to the jury for determination"). Reasonable persons could differ as to whether the evidence in this case revealed the uncovered and unfilled French drain constituted a latent or patent defect, and therefore summary judgment should not have been granted on this issue.
The next question is whether Monsanto had either actual or constructive knowledge of the defect, giving rise to a duty to warn, if, of course, the defect was latent. Houk does not dispute Monsanto's claim that it had no actual knowledge that the French drain was uncovered or unfilled. Thus, summary judgment would be appropriate in this case if "there is no evidence from which the jury could reasonably infer constructive knowledge of the dangerous condition on the premises." Haynes v. Lloyd, 533 So.2d 944, 947 (Fla. 5th DCA 1988). "Constructive knowledge will be imputed if `the condition is one which has existed for sufficient length of time that the owner should have known of it.'" Westchester Exxon v. Valdes, 524 So.2d 452, 456 (Fla. 3d DCA 1988) (quoting Marlowe v. Food Fair Stores of Florida, Inc., 284 So.2d 490, 492 (Fla. 3d DCA 1973), cert. denied, 291 So.2d 205 (Fla. 1974)). Constructive knowledge may be inferred from circumstantial evidence. Grizzard v. Colonial Stores, Inc., 330 So.2d 768 (Fla. 1st DCA 1976) (partially opened can of thawing frozen orange juice in nearby freezer sufficient evidence for a jury to find that partially liquefied orange concentrate on floor had been there long enough to put store on notice of dangerous condition). Thus, summary judgment is inappropriate in this case if any evidence suggests that the drain had been uncovered and unfilled for a sufficient period of time to put Monsanto on notice of its dangerous condition.
The record reveals that Monsanto, rather than Fluor Daniel, was responsible for the maintenance of the French drains located on the property. Although the contract between Monsanto and Fluor Daniel made Fluor Daniel responsible for safety of the construction site, the record does not establish that the drain was part of the construction project or that Fluor Daniel asserted any control over the drain. Nor is this a case where the plaintiff was injured by the very condition he was hired to correct. See, e.g., Parrish v. Matthews, 548 So.2d 725 (Fla. 3d DCA 1989) (domestic employee could not recover from owner for injuries resulting from slipping on paper on stairs); Storr v. Proctor, 490 So.2d 135 (Fla. 3rd DCA), review denied, 500 So.2d 546 (Fla. 1986) (landowner not responsible for injuries to construction worker occurring when wire mesh broke loose and punctured his leg). John Jervis, the Safety Fire Protection And Security Superintendent for Monsanto, testified that prior to Houk's accident a Monsanto employee had been similarly injured by stepping into a French *761 drain. Despite the potential for serious injury in the event a drain became uncovered or was not filled with slag, Monsanto did not maintain a specific inspection schedule to ensure that the drains were either filled with slag or covered. Glen Reddish, general superintendent of maintenance and engineering at Monsanto, testified that each area manager was responsible for the maintenance of French drains in his area. He did not know when the French drain at issue here had last been inspected. Teddy Kirkland, a carpenter's helper for Fluor Daniel, testified that he began work at the construction site two or three weeks prior to the accident and had looked into the drain and observed that it was not covered or filled with slag. Nothing in the record indicated that anyone from Fluor Daniel had removed a cover or slag from the drain. These facts are sufficient to raise an inference that the unfilled and uncovered condition of the French drain had been in existence a sufficient amount of time such that Monsanto had constructive knowledge of the dangerous condition. Therefore, this issue does not provide a basis for granting summary judgment in favor of Monsanto.
Accordingly, we reverse and remand for proceedings consistent with this opinion.
SMITH and WEBSTER, JJ., concur.