662 So.2d 1005 (1995)
Bobby L. HAWKINS and Glenda Hawkins, Appellant,
v.
CHAMPION INTERNATIONAL CORP., a Connecticut Corporation, Appellee.
No. 94-3370.
District Court of Appeal of Florida, First District.
November 14, 1995.
Rehearing Denied December 5, 1995.
*1006 Jay W. Manuel of Pittman, Manuel & Thompson, P.A., Panama City; Russ Bohn and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellants.
Robert P. Gaines of Beggs & Lane, Pensacola, for Appellee.
VAN NORTWICK, Judge.
Bobby L. Hawkins and his wife Glenda Hawkins appeal the trial court's final summary judgment entered in favor of Champion International Corporation, appellee, in the Hawkins' suit for damages for injuries sustained by Bobby Hawkins while he was working at Champion's paper mill as an employee of a subcontractor. We find material issues of fact and reverse.
On August 6, 1990, Bobby Hawkins was employed as a millwright by Brown & Root, USA, Inc., a company with which Champion contracted to install a new conveyor system in Champion's paper mill in Pensacola, Florida. The new conveyor system was being installed adjacent to the existing system, allowing the mill to remain operational during the installation. At safety meetings Hawkins had been warned by officials of Brown & Root with respect to the general dangers of working around moving machinery.
As part of the installation, the concrete flooring was cut away in an area on the second floor of the mill to allow for the placement of additional structural beams to provide additional support for the new machinery. A barricade was constructed around the cut-out area and, since only beams and rebar remained in that area of the floor and the workers were exposed to a 15 to 20 foot drop to the first floor, workers within the barricaded area were required to wear safety belts. Immediately preceding the accident, Hawkins was operating a leveling device mounted on a tripod, about twenty feet away from the barricaded area, while Hawkins' two helpers were attempting to level machinery that was being installed inside the barricaded area. The two helpers encountered difficulty with the leveling process and Hawkins walked to one side of the barricaded area to instruct them on leveling the new conveyor system. That side of the barricaded area was located in close proximity to an operating conveyor system. When Hawkins squatted down next to the barricaded area, he was only two to three feet from the adjacent operating conveyor's roll stop, a device on a conveyor system that uses a raised hydraulic arm to stop paper rolls, each weighing approximately 6,000 pounds, as they roll down the conveyor system. When the hydraulic arm of the roll stop is raised to stop a paper roll, a gap is created under the arm; when the arm lowers, allowing the paper roll to continue down the conveyor system, it closes the gap at the so-called pinch point. As Hawkins reached his arms into the barricaded area to instruct the workmen, his toe slipped into the gap under the raised arm in the roll stop. The hydraulic arm of the conveyor then lowered, dragging Hawkins' foot into the machinery and crushing it. Hawkins testified that he had not noticed the gap that was created in the side of the roll stop when the conveyor arm was in the raised position; and when the arm was in the down position, no such gap existed. According to Hawkins, except for the specific piece of machinery that caused his injury, Champion had installed plate guards on the remaining mill machinery to protect workers from stepping into gaps in the machinery.
Alan Kimsey, Brown & Root's general foreman and Hawkins' direct supervisor, testified by deposition that the barricade was in place in part to require the installation work to be performed within that specific area, so as not to interfere with the mill's normal operation. Kimsey acknowledged, however, that the leveling device being used by Hawkins immediately before the accident could not have been operated within the barricaded area. When asked whether he had ever discussed with the Brown & Root workers the specific hazards existing in their work area, Kimsey responded only that he felt that he had told them to stay inside the barricaded area. Kimsey was not aware of the exact gap created in the roll stop when the conveyor arm was in the raised position.
*1007 Jeffrey Sheridan, Champion's project engineer, testified that the Brown & Root workers were restricted to the general confines of their work area, but were not ordered to stay solely within the barricaded area. Sheridan also acknowledged that a transit leveling device, such as the one used by Hawkins, could not be operated inside the barricaded area. The record also includes the affidavit of James Anderson, Jr., a professional engineer, who opined that the roll stop that injured Hawkins was defective in that it had a dangerous unguarded pinch point, whereas other similar roll stops in the same area of the mill were guarded.
A person who is having work performed on his premises by an independent contractor and has actual or constructive knowledge of latent or potential dangers on the premises owes a duty to give warning of, or use ordinary care to furnish protection against, such dangers to employees of the contractor and subcontractor who are without actual or constructive notice of the dangers. Mozee v. Champion International Corp., 554 So.2d 596, 598 (Fla. 1st DCA 1989), review denied, 564 So.2d 487 (1990). The duty to give notice and warn of a dangerous condition known to the owner of the premises, but not known to the independent contractor and its employees, is discharged by notice given to supervisory personnel of the independent contractor. Id. at 598.
Hawkins argues that our decision in Houk v. Monsanto Co., 609 So.2d 757 (Fla. 1st DCA 1992), is applicable to the facts of this case and requires reversal. We agree. In Houk, the plaintiff, an employee of an independent contractor hired to build a chemical storage tank on the defendant's property, was injured when he stepped into a steam drain located on the job site. We reversed the entry of a summary judgment in favor of defendant, finding material issues of fact with regard to whether the uncovered drain constituted a latent or patent defect and, if latent, whether the defendant had either actual or constructive knowledge of the defect, giving rise to the duty to warn. Id. at 759-761. Applying a similar analysis to the facts sub judice, the first question that arises here is whether the space created in the operating roll stop when the conveyor arm was raised presented a latent defect, that is, a defect that is not apparent by use of one's ordinary senses from a casual observation of the premises. Id. at 759. Both Kimsey and Hawkins were aware that the existing conveyor was operational and that paper rolls were constantly being moved along the conveyor. Since Hawkins had been working within a few feet of the roll stop in question, one could conclude that the gap created in the roll stop when the conveyor arm raised was readily observable. On the other hand, according to Hawkins, the gap was not noticeable when the conveyor arm was in the lowered position and, furthermore, the uniform beige paint color on the machinery camouflaged the gap. This evidence, especially in combination with the testimony of Brown & Root's foreman that he was unaware of the gap created by the roll stop, creates a reasonable inference that the gap was not discoverable by casual observation and, therefore, was a latent defect.
Assuming the gap created by the roll stop to be a latent defect, the next question is whether Champion had either actual or constructive knowledge thereof, giving rise to a duty to warn. The testimony herein  that other similar roll stops in the same area of the mill had plate guards in place  is sufficient to give rise to an inference that Champion was on notice of the dangerous condition.
The remaining issue concerns the adequacy of the warning provided. Hawkins testified he was warned generally at Brown & Root safety meetings about the dangers of working around moving machinery. Champion, relying on the facts in Mozee, supra, submits that this general warning was sufficient. In Mozee, the plaintiff was electrocuted by a charged electrical line while he was removing asbestos from the defendant's building. This court affirmed the summary judgment entered in favor of the defendant on the basis that the defendant had discharged its duty to warn by advising the plaintiff's employer that the existing electrical *1008 lines in the building should be presumed to be hot. Id. at 598. We find Mozee to be distinguishable. There, the plaintiff was injured by the precise dangerous condition of which he had been warned. In the instant case, however, although the Brown & Root employees were warned of the general dangers of working around moving machinery, there was no evidence they were warned of the type of dangerous condition that injured Hawkins. Clearly an issue of fact is presented here with regard to whether the general warning provided to the Brown & Root workers was adequate under the circumstances.
Summary judgment should be granted only where there is a complete absence of any genuine issue of material fact. See Moore v. Morris, 475 So.2d 666 (Fla. 1985). Where the evidence of a defect reasonably gives rise to conflicting inferences, a question of fact is present and summary judgment is inappropriate. Kala Investments, Inc. v. Sklar, 538 So.2d 909 (Fla. 3d DCA), review denied, 551 So.2d 460 (Fla. 1989), and 551 So.2d 461 (Fla. 1989). In the instant case, the trial court granted Champion's motion for summary judgment, finding there to be no issue of fact "as to whether plaintiff's supervisor was on notice of the hazards that might be encountered by plaintiff and his fellow employees and had taken steps to protect them from the hazards." Presumably, the trial court concluded that Kimsey's general warning to the Brown & Root workers  that the existing machinery would be operational  sufficiently encompassed the precise dangerous condition which injured Hawkins. However, on the record before us, we believe that reasonable persons could differ as to whether the unguarded gap located in the roll stop that injured Hawkins constituted a latent or patent defect. If latent, the factual issue then becomes whether Champion had actual or constructive knowledge thereof, giving rise to the duty to warn, and whether Champion adequately warned Brown & Root of the potential danger. These disputed issues of fact preclude a determination at this juncture that, as a matter of law, Champion was without fault in causing Hawkins' injury.
Accordingly, we REVERSE and REMAND for proceedings consistent with this opinion.
ERVIN and LAWRENCE, JJ., concur.