LEWIS, J.,
dissenting.
I respectfully dissent because, in my view, the trial court erred in granting Cen- *450 tel Cellular Company’s (“Centel”)[1] motion for summary judgment on the ground that Centel had no duty to the decedent, Randy Brockney, under the facts of this case.
The decedent was an employee of Excel Communications (“Excel”), an independent contractor hired by Centel to mount antennas on its cellular telephone tower. The decedent was killed on April 18, 2002, while operating a four-wheel, all-terrain vehicle (“ATV”) during the course and scope of his employment as supervisor of an Excel maintenance crew, which was performing technical service on the tower under a contract with Centel. At the time of the accident, Centel owned the real property upon which the tower was located and the tower itself.
According to the deposition testimony of the decedent’s co-workers, their crew brought the ATV to the tower site “to pull guy wires out” and to reduce the distance they had to walk around the site in order to complete their work. On the day of his fatal accident, the decedent was using the ATV to go to a location beyond the tower to “set the azimuths,” which he needed to do because the azimuths could not be set up close to the tower and because the woods were so thick that the top of the tower could not be seen through them. The decedent drove down a dirt road adjacent to the tower site, hit a steel cable that had been strung across the road, flipped off the ATV, and died as a result of the accident. The parties stipulated below that the road on which the decedent was traveling when he struck the steel cable was located on an “ingress and egress and utility easement” to Centel’s property and that Centel did not attach anything to the steel cable or the surrounding area that warned of the steel cable’s existence, danger, or hazard. For purposes of its motion for summary judgment, Centel conceded that the cable was hazardous or created a dangerous condition.
Via deposition, James Edward Campbell, the owner of Campbell Sand & Gravel Company, testified that at his direction, John Parker, his former employee, had placed the steel cable across a road that was on the company’s property to keep poachers off and prevent dumping on the property. Campbell testified that he instructed Parker to erect the steel cable on the company’s property but that he did not take measurements or look for surveyor’s monuments to establish his property lines. Neither Campbell nor Parker obtained Centel’s consent to place the steel cable across the road. Parker testified that he strung the steel cable between two trees in the general area that Campbell told him to place it and that, in the middle of the road, he placed a post with a welded loop on top of it, which he ran the steel cable through.
Four Centel employees testified via deposition that they were aware of the steel cable’s existence prior to the decedent’s accident. Moreover, Jack Crusan, a Cen-tel network operations manager, testified that he first noticed the steel cable three to four months prior to the decedent’s accident but that he did not believe the steel cable was stretched across any property owned by Centel because, based on what he had been told and his vague understanding of the property lines, Centel did not own the road. There was conflicting testimony regarding the visibility of the steel cable and whether or how well it was marked with warning signs and flags on the day of the decedent’s accident. While several witnesses testified to the *451 effect that the steel cable was clearly visible and was well-marked with flags and signs, several others testified that they had not noticed the steel cable when they went to the tower site prior to the decedent’s accident and that any markings on the steel cable were not readily visible. For instance, Centel employee Paul Jones testified that he did not see any warning signs or ribbons on the cable until after the decedent’s accident. Similarly, Centel employees Mike Meadows and Jimmy Hanson each testified that they did not remember seeing any markings or signs warning of the cable’s existence when they went to the tower site. Crusan testified that he saw the cable from a distance but that he did not notice any signs warning of its existence, although it had one piece of faded surveyor’s tape tied to it.
Edward Shontz, a professional land surveyor, testified via deposition that following the decedent’s accident, his company conducted a survey of the tower site, which revealed that the west end of the steel cable had been attached to a four-inch oak stump that was approximately 1.08 feet west of the “west right-of-way line of the easement” and about one foot south of Centel’s northern property line. Thus, on the day of the decedent’s accident, both the stump and a portion of the steel cable that caused the accident were located on Centel’s property.
In its Final Summary Judgment, the trial comet found that the exceptions to the general rule that a property owner who hires an independent contractor to perform work on his property is not liable for injuries sustained by the contractor’s employees were inapplicable to this case. Specifically, the trial court found that the exception that a property owner must warn or protect an independent contractor against potential dangers on the premises about which the property owner has actual or constructive knowledge did not apply because Centel did not have a threshold duty to determine whether the steel cable was attached to a tree located on its property. The trial court set forth that it was unaware of any precedent requiring Centel to suspect that the steel cable was improperly attached to its property or, even if it developed such a suspicion, to incur the expense of a professional survey in order to confirm or dispel the suspicion. This appeal followed.
“ ‘Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.’ ” Selim v. Pan Am. Airways Corp., 889 So.2d 149, 153 (Fla. 4th DCA 2004) (quoting Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000)). “It is well established that summary judgment should only be granted if the moving party demonstrates conclusively that no genuine issues exist as to any material fact, with all reasonable inferences drawn in favor of the opposing party.” Gerard v. Scott Crane Rental Corp., 754 So.2d 896, 897 (Fla. 1st DCA 2000). If the record “raises even the slightest doubt that [a genuine issue of material fact] might exist, that doubt must be resolved against the moving party, and summary judgment must be denied.” Newman v. Herrin, 667 So.2d 271, 272 (Fla. 1st DCA 1995). Because whether Centel had a duty of care to the decedent is a question of law, the trial court’s ruling on Centel’s motion for summary judgment is subject to de novo review on appeal. See Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla. 2001).
As the majority acknowledges, while the general rule is that a property owner who hires an independent contractor is not liable for injuries sustained by the contractor’s employees, there are two principle *452 exceptions to that rule. Mozee v. Champion Int’l Corp., 554 So.2d 596, 597-98 (Fla. 1st DCA 1989). Under one of those exceptions:
A person who is having work done on his premises by an independent contractor and has actual or constructive knowledge of latent or potential dangers on the premises owes a duty to give warning of, or use ordinary care to furnish protection against, such dangers to employees of the contractor and subcontractor who are without actual or constructive notice of the dangers.
Id. at 598. Thus, pursuant to Mozee, a property owner owes a duty to warn or to use ordinary care to protect an independent contractor’s employees when (1) the property owner is having work performed on his premises by the independent contractor, (2) the property owner has actual or constructive knowledge of latent or potential dangers on his premises, and (3) the independent contractor’s employees lack actual or constructive knowledge of the dangerous condition.
Under the first prong of the Mozee analysis, Centel, the property owner, was having work performed on its premises by Excel, an independent contractor. Although the decedent’s accident did not occur on Centel’s property, a property owner’s liability under Mozee is not limited to injuries to an independent contractor’s employees that occur on the landowner’s property. Rather, in certain circumstances, a landowner owes a duty of care to persons injured off its premises as a result of conditions on the landowner’s property. See Almarante v. Art Inst, of Ft. Lauderdale, Inc., 921 So.2d 703, 705 (Fla. 4th DCA 2006) (“A landowner’s conduct can give rise to a zone of risk extending beyond the physical boundaries of his property when harm reaching outside those boundaries is foreseeable.”); see also Whitt v. Silverman, 788 So.2d 210, 222 (Fla.2001); Gunlock v. Gill Hotels Co., Inc., 622 So.2d 163, 164 (Fla. 4th DCA 1993); Johnson v. Howard Mark Prods., Inc., 608 So.2d 937, 938 (Fla. 2d DCA 1992). For example, as the majority acknowledges, one who exercises implied authority over a piece of property by inviting a person to utilize the property in a particular manner may be responsible to invitees in the same manner as a landowner. See Regency Lake Apartments Assocs., Ltd. v. French, 590 So.2d 970, 974 (Fla. 1st DCA 1991). Given the decedent’s co-workers’ testimony that the decedent needed to drive down the road to go to a location beyond the tower to set the azimuths, a jury ■ could have reasonably found that Centel invited members of the decedent’s crew to utilize the road in that manner by hiring them to perform work on the tower that required them to set the azimuths. See id.; see also IRE Fla. Income Partners, Ltd. v. Scott, 381 So.2d 1114, 1117 (Fla. 1st DCA 1979) (“The duty to keep the premises safe for invitees extends to all portions of the premises that are included in the invitation and that are necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended. This includes places where his presence should reasonably be anticipated, as well as places where he is allowed to go.”).
Under the second prong of the Mozee analysis, given that at least four Centel employees knew about the steel cable before the decedent’s accident and that Cen-tel conceded for summary judgment purposes that the cable was hazardous or created a dangerous condition, the evidence would clearly support a determination that Centel had actual knowledge of the dangerous condition created by the cable. In fact, Centel does not argue on appeal that it did not have knowledge that the steel cable was suspended across the *453 road but only that it did not have knowledge that a portion of the steel cable was on its property. Even assuming arguendo that Centel did not have actual knowledge of the dangerous condition, it is undisputed that the steel cable was strung across the road sometime before John Parker left his employment with Campbell Sand & Gravel company in 1999 and that the decedent’s accident occurred on April 18, 2002. Those facts are sufficient to raise an inference that the steel cable was suspended across the road for a sufficient amount of time to put Centel on constructive notice of the dangerous condition. See Houk v. Monsanto Co., 609 So.2d 757, 760 (Fla. 1st DCA 1992) (stating that constructive knowledge is imputed if the dangerous condition has existed for a sufficient length of time such that the landowner should have known about it).
The remaining question under the second prong of the Mozee analysis is whether the dangerous condition was on Centel’s property. While the majority holds that it was not, it is undisputed that approximately 1.08 feet of the steel cable and one of the trees to which it was attached were located on Centel’s property. Because the steel cable’s attachment to the trees, one of which was located on Centel’s property, caused it to be suspended at a fatal height that caused the decedent’s accident, a portion of the hazardous condition was located on Centel’s property. Nonetheless, Centel argues that mere knowledge of the cable’s existence should not give rise to a duty to suspect that the cable encroached upon its property. This argument is consistent with the trial court’s conclusion and the majority’s holding that Centel did not have a duty to determine whether the cable was tied to a tree that was located on its property. For several reasons, I disagree with the trial court’s rationale and the majority’s holding.
First, while the trial court was correct that the existence of a legal duty is a question of law, see McCain v. Florida Power Corp., 598 So.2d 500, 502 (Fla.1992), both the trial court’s rationale and the majority’s holding erroneously equate the existence of a legal duty with the breach of a legal duty. Any duty Centel might have had was not to determine whether the cable was tied to a tree on its property but, rather, to protect or warn Excel’s employees of a dangerous condition that it knew about and that was, in fact, located partially on its property.
Second, Centel’s knowledge of the steel cable’s existence does not, in and of itself, create a legal duty in this case. Rather, the trial court erred in finding, as a matter of law, that Centel did not have a duty under Mozee for the following reasons: (1) Centel hired Excel to work on its property; (2) Centel had knowledge of the existence of the steel cable, a portion of which was on its property and conceded the cable created a dangerous condition; and (3) as set forth below, the evidence would support a finding that the dangerous condition was a latent one of which the decedent did not have actual or constructive knowledge.
Third, the majority’s holding that Centel owed no duty to determine whether the cable encroached upon its property unjustly rewards the company for its indifference. Centel took no action after discovering the cable because it assumed that the cable was not attached to its property based on Jack Crusan’s vague understanding of Centel’s property lines and general knowledge that Centel did not own the dirt road and easement across which the cable was strung. A jury should have been allowed to determine whether Centel should have done more under the circumstances. See Selvin v. DMC Regency Residence, Ltd., 807 So.2d 676, 682 (Fla. 4th DCA *454 2001) (“How the duty of due care should be met in a given case is for the jury.”).
Fourth, the majority reasons that it would be unrealistic to impose a duty on a rural landowner to have a professional survey conducted in order to determine whether a dangerous condition encroaches on the landowner’s property. However, contrary to the majority’s reasoning, Cen-tel could have discharged any duty it had under Mozee without obtaining a professional survey to determine the precise location of the trees to which the cable was attached. As appellant argues, Centel could have spoken to neighboring landowners, examined any existing maps and surveys, searched for existing surveyor’s monuments, or contacted its legal department for advice. At the very least, Centel could have ensured that the cable was well-marked or simply warned Excel’s employees, including the decedent, of the dangerous condition posed by the steel cable.
Finally, the third prong of the Mozee analysis requires a determination as to whether the steel cable posed a latent danger of which the decedent did not have constructive knowledge.[2] A latent danger is defined as “one that is ‘not apparent by use of one’s ordinary senses from a casual observation of the premises.’ ” Houk, 609 So.2d at 759 (citations omitted). “Constructive knowledge is a fact-intensive issue based on information that a party ‘should have known.’ ” Sutherland ex rel. Sutherland v. Pell, 738 So.2d 1016, 1017 (Fla. 2d DCA 1999) (citations omitted). Because there was conflicting testimony regarding the visibility of the steel cable and whether or how well it was marked on the day of the decedent’s accident, reasonable people could disagree as to whether the steel cable constituted a latent or patent hazard and whether the decedent had constructive knowledge of its existence. Because genuine issues of material fact remain, which should be submitted to a jury for a determination as to whether Centel had a duty to warn or protect the decedent under Mozee, I would hold that the trial court erred in granting Centel’s motion for summary judgment.
For the foregoing reasons, I would reverse the trial court’s Final Summary Judgment and remand the cause for further proceedings.

. The record reflects that Centel changed its name to Sprint Cellular in 1993 and to 360° Communications Company in 1996 and then merged with Alltel Mobile Communications in June 2001.

. Although Centel would not have had a duty to warn the decedent or to protect him from the dangerous condition if the decedent had actual knowledge of the steel cable's existence, there is no evidence in the record, and Centel does not argue on appeal, that the decedent had actual knowledge of the steel cable until it was too late for him to avoid his fatal accident.