296 So.2d 92 (1974)
CITIZENS NATIONAL BANK OF ORLANDO, Appellant,
v.
John C. YOUNGBLOOD, Appellee.
No. 72-1203.
District Court of Appeal of Florida, Fourth District.
June 7, 1974.
Rehearing Denied July 11, 1974.
Winifred J. Sharp and Charles R. Fawsett of Johnson, Motsinger, Trismen & Sharp, Orlando, for appellant.
W.F. Simonet of Fishback, Davis, Dominick & Simonet, Orlando, for appellee.
SMITH, CULVER, Associate Judge.
This is an appeal from a final judgment entered by the Circuit Court in and for Orange County, Florida. The Appellant, Citizens National Bank of Orlando, was the Defendant below. The Appellee, John C. Youngblood, was the Plaintiff. The parties will be referred to as they stood in the court below, that is; Appellee as Plaintiff, and Appellant as Defendant-Bank, or Bank.
At the trial of this case, when the Plaintiff closed, Defendant-Bank moved for a directed verdict which motion was denied. Defendant-Bank raises this as its first point on appeal for reversal. We hold that Defendant's motion for directed verdict should have been granted and therefore reverse.
The Complaint upon which this case went to trial reads as follows:
1. That in June of 1971 the Plaintiff was indebted to the Defendant and as security for the indebtedness, the Plaintiff furnished to the Defendant collateral consisting of 2,035 shares of common stock of the Bank of West Orange, a *93 banking corporation in Orange County, Florida.
2. In June of 1971 the Defendant called upon the Plaintiff to pay all of the Plaintiff's obligations to the Defendant, and pursuant to this demand, the Plaintiff made arrangements for the sale of said shares of stock to Ben Griffin, an attorney at law in Orange County, Florida, for Thirty-Four Dollars ($34.00) per share.
3. The said arrangements were made known to and agreed to by the Defendant on June 1st, 1971. The Defendant requested written authorization from the Plaintiff and his wife for the said sale to Ben Griffin and such written authorization was delivered to the Defendant on June 2nd, 1971.
4. The Defendant thereafter, on June 3rd, 1971, sold the said stock of the Plaintiff to Elmer Youngblood for the sum of Thirty Dollars ($30.00) per share thereby causing the Plaintiff to sustain a loss of Four Dollars ($4.00) per share or the total sum of Eight Thousand One Hundred Forty Dollars ($8,140.00).
In view of our holding, the pertinent facts consist of the evidence presented by the Plaintiff on his case in chief. In May and June of 1971, Plaintiff was indebted to Defendant-Bank in the approximate amount of $73,000.00. His notes were partially secured by 2,035 shares of stock in the Bank of West Orange. Defendant-Bank called the notes and notified the Plaintiff that the stock would be sold at a private sale on June 3, 1971, at 10:00 A.M. This sale was held, and the stock was sold for $30.00 per share. Plaintiff testified concerning a deal with one Ben Griffin for sale of the stock to Griffin for $34.00 per share. The Defendant-Bank was not notified of this deal by the Plaintiff and Plaintiff did not advise the bank of it until about a week after the stock had been sold.
Griffin testified at length about his conversation with Mr. Gay, President of the Defendant-Bank who, unfortunately, passed away before this action went to trial. Griffin's testimony was that he talked with Gay four or five days before the stock was sold and told Gay that he wanted to buy Plaintiff's stock at $34.00 per share, and discussed the possibility of borrowing the money for the purchase from the bank. No loan terms were discussed. Gay advised him to secure a letter from Plaintiff releasing the stock. Griffin made no offer to the bank for the stock. The only offer he made was to the Plaintiff. The one conversation mentioned above was the only one between Griffin and Gay, or anyone else connected with the bank. Griffin never made a tender to either the Plaintiff or the bank, and testified that he was representing himself and not Plaintiff when asked if Gay at any time told him that the bank would sell the stock to him and to no other person, Griffin replied "I never asked Mr. Gay to sell me the stock, period."
Although Plaintiff directed one of his employees to write a letter to the Defendant-Bank releasing the stock to Griffin, the evidence fails to establish that it reached the bank before the sale.
Plaintiff's Complaint alleges that the arrangements between Plaintiff and Griffin were made known to and agreed to by Defendant-Bank. The evidence in no way supports the contention that the bank made any binding agreement with Griffin, and certainly not with the Plaintiff. As a matter of fact, the trial court correctly reached this conclusion that no case had been made in contract, and it declined to charge the jury on that theory. The trial court, however, allowed the case to go to the jury on the theory that the bank did not sell the stock in a commercially reasonable manner. We fail to see how such a cause of action could be maintained under the allegations of Plaintiff's Complaint.
We realize, as Plaintiff points out in his brief, that the degree of certainty required in a pleading is that the pleader *94 must set forth the facts in such a manner as to reasonably inform his adversary of what is proposed to be proved in order to provide the latter with opportunity to meet it and prepare his evidence. Applying this rule to the instant case, what has Plaintiff told Defendant he proposes to prove so as to justify a recovery? Plaintiff says that arrangements made between Plaintiff and Griffin for sale of Plaintiff's stock were agreed to by Defendant-Bank, and further, that written authorization was delivered to the bank one day before it sold the stock. Under these allegations, Defendant-Bank was only put to defend an action for breach of an agreement. We cannot find any allegations bearing upon a charge that the Defendant-Bank failed to sell the stock in a commercially reasonable manner. No motion to amend the complaint was ever made. In Walker v. Walker, Fla., 254 So.2d 832, the First District Court of Appeal stated:
"In construing a pleading, the Court is prohibited from inserting an essential allegation in that pleading by inference."
In Pegg v. Bertram, Fla.App., 176 So.2d 918, the Court stated:
"We first note that an appellate court, in reviewing an order dismissing a complaint may not supply an essential allegation by inference."
The same rule is applicable to an appellate court's review of a trial court's order on a motion for directed verdict. Where, as in the case before us, there is a complete variance between the complaint and the proof offered in support thereof, and where the evidence does not as a matter of law have a tendency to establish the cause of action alleged, the trial court should direct a verdict for the Defendant.
Reversed with direction to enter Judgment for the Defendant, Citizens National Bank of Orlando.
OWEN, C.J., and WALDEN, J., concur.