699 So.2d 701 (1997)
DADE COUNTY SCHOOL BOARD, Appellant,
v.
RADIO STATION WQBA, City of Miami, Susquenhanna Pfaltzgraff and Three Kings Parade, Inc., Appellees.
Nos. 95-0534, 94-3011.
District Court of Appeal of Florida, Third District.
May 7, 1997.
Rehearing Denied October 1, 1997.
Peters, Robertson, Lax, Parsons, Welcher, Mowers & Passaro, and Geralyn M. Passaro, and Kenneth R. Drake and Jeffrey R. Mowers, Fort Lauderdale, for appellant.
Walton Lantaff Schroeder & Carson, and John P. Joy, and Kenneth L. Valentini, for appellees.
Before COPE, GERSTEN and SHEVIN, JJ.
*702 GERSTEN, Judge.
Appellant/cross-appellee Dade County School Board ("DCSB"), appeals a final judgment requiring DCSB to reimburse appellees/cross-appellants Three Kings Parade, Inc., Radio Station WQBA, Susquehanna Broadcasting Co., and the City of Miami ("sponsors"), for monies paid in settlement of various personal injury claims. The sponsors cross-appeal the portion of the final judgment denying their claim for prejudgment interest. We affirm and remand with instructions.
At the 1990 annual Three Kings Day Parade, a can of flammable liquid used to ignite Miami High School majorettes' batons burned nearby spectators. The injured spectators individually sued the sponsors of the parade and DCSB. The complaints basically alleged the sponsors and DCSB were negligent in failing to exercise reasonable care to supervise parade participants.
WQBA ran the parade as a promotional event and required participants to sign a "Participation Agreement." The agreement contained an indemnification clause which provided that participants would "defend and hold harmless" WQBA and the City of Miami from any claims resulting from the parade. A Dade County employee from the Office of Vocational, Adult, Career and Community Education ("OVACCE") of Dade County Public Schools, Mr. Moffi, signed the agreement for the Miami High marching band which it had agreed to sponsor. The band was to carry an OVACCE banner in the parade.
Two students assisting the majorettes, Maria Lozano and Alfredo Sans, brought the flammable liquid cans through the parade entrance past the police and fire officials. In the process of reigniting a majorette's baton, the flammable liquid caught fire. Sans kicked the can away resulting in burn injuries to several spectators.
The injured spectators' negligence claims against the sponsors and DCSB were virtually identical, asserting negligence in permitting flammable materials to be used in a dangerous manner. The sponsors responded by claiming DCSB was the sole cause of the injuries and filing cross-claims against DCSB for indemnity and contribution. The sponsors later filed an independent action against DCSB seeking damages and a declaratory judgment that DCSB had to indemnify the sponsors for all claims under the terms of the "Participation Agreement."
The sponsors settled the injured spectators' claims and sought summary judgment on its claims against DCSB for reimbursement of the settlement monies. The trial court entered partial summary judgment in favor of the sponsors under the Participation Agreement for damages attributable to the actions or inactions of DCSB.
At trial, DCSB admitted it owed a duty to supervise the majorettes, but denied responsibility to the sponsors for contractual indemnity because the sponsors were never sued by the underlying claimants for vicarious liability. The jury found DCSB to be 90% negligent, and Sans 10% negligent. The jury further found DCSB 100% responsible for the actions of Sans at the parade. Hence, the sponsors were absolved of all negligence. Further, the jury found no special relationship between WQBA or the City of Miami and DCSB.
After the jury verdict, both sides moved for entry of judgment in their favor. The sponsors argued that since DCSB was found to be 100% liable, they were entitled to reimbursement for the settlement monies paid. DCSB argued that because the jury found no special relationship between the parties, indemnity was not available as a matter of law.
The trial court entered an order denying various other post trial motions, and entered final judgment in favor of the sponsors for $2,035,000, representing 100% of the settlement monies paid by the sponsors on the personal injury claims. DCSB never contested the reasonableness of the settlement amount. The trial court awarded the sponsors $59,391.50 in attorney's fees and $15,000 in costs, but denied the sponsors' motion for prejudgment interest on the settlement monies from the dates they were paid.
DCSB appeals the entire adverse award of $2,035,000 and appeals the judgment language "let execution issue." The sponsors *703 cross-appeal the denial of their motion for prejudgment interest.
We first address the one issue requiring remand. As correctly pointed out by DCSB, the trial court erred in including the language "for which sum let execution issue" in its final award. Pursuant to Section 768.28(5), Florida Statutes (1995):
Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions therefor, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000.
DCSB is a political subdivision of the State of Florida, and thus its liability is limited by the statutory cap. Section 768.28(5) authorizes the rendition of a judgment in excess of the maximum liability where that portion exceeding the cap is reported to the Legislature and "only by further act of the Legislature." See § 768.28(5), Fla.Stat. (1995). No such authorization was obtained, and thus we must remand with instructions to the trial court to strike the language "for which sum let execution issue" in the final judgment.
In all other respects, we affirm the award below finding no merit in either the arguments raised in the main appeal or in the cross appeal. With regard to the main appeal, we recognize the award cannot be supported on common law indemnity grounds because of the jury's technical finding that there was no special relationship between the parties. See Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla.1979)(requiring special relationship between indemnitee and indemnitor giving rise to vicarious, constructive, derivative or technically liability). However, considering the record as a whole, and particularly the jury verdict finding DCSB 100% at fault for causing the injuries to the parade spectators, we hold that the doctrine of equitable subrogation applies to provide the sponsors recompense.
The doctrine of equitable subrogation was created to afford the courts an avenue to ensure complete justice between parties irrespective of technical legal rules. Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702 (Fla.1980); Dantzler Lumber & Export Co. v. Columbia Cas. Co., 115 Fla. 541, 156 So. 116 (1934); Allstate Life Ins. Co. v. Weldon, 213 So.2d 15 (Fla. 3d DCA 1968). It applies where a person or entity, not acting voluntarily, has paid a debt for which another was primarily liable, and which in equity and good conscience should have been discharged by the latter. United States Fidelity & Guaranty Co. v. Bennett, 96 Fla. 828, 119 So. 394 (Fla.1928); McKenzie Tank Lines, Inc. v. Empire Gas Corp., 538 So.2d 482 (Fla. 1st DCA), rev. denied, 544 So.2d 200 (Fla.1989).
The policy behind the doctrine is to prevent unjust enrichment by assuring that the party responsible for a debt is ultimately answerable for its discharge. See United States Fidelity & Guaranty Co. v. Bennett, 96 Fla. at 828, 119 So. at 394; Eastern Nat'l Bank v. Glendale Fed. Sav. and Loan Ass'n, 508 So.2d 1323 (Fla. 3d DCA 1987). Although the right to subrogation is not absolute, it is a "flexible and elastic equitable doctrine, and hence `the mere fact that the doctrine of subrogation has not been previously invoked in a particular situation is not a prima facie bar to its applicability.'" Atlanta Int'l Ins. Co. v. Bell, 438 Mich. 512, 521, 475 N.W.2d 294, 298 (1991).
Moreover, subrogation has been held to extend to anyone "paying any part of the debt of another provided the entire debt is paid," Furlong v. Leybourne, 138 So.2d 352 (Fla. 3d DCA 1962), providing that party is not a mere "volunteer," but has some right or interest of its own to protect. Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916); Fortenberry v. Mandell, 271 So.2d 170 (Fla. 4th DCA 1972), cert. discharged, 290 So.2d 3 (Fla.1974).
Applying these principles here, the sponsors settled with the injured spectators to protect their own interests as named defendants in the spectators' original suit. The fact that the sponsors were ultimately found to be without fault, does not place them in the category of mere "volunteers" and does *704 not preclude application of the doctrine. See West American Ins. Co. v. Yellow Cab Co., 495 So.2d 204 (Fla. 5th DCA 1986), rev. denied, 504 So.2d 769 (Fla.1987).[1]
Our views in this regard are summarized and far better expressed in the opinion of Kala Invs., Inc. v. Sklar, 538 So.2d 909 (Fla. 3d DCA 1989), rev. denied, 551 So.2d 460 (Fla.1989), and rev. denied, 551 So.2d 461 (Fla.1989), which thoroughly discusses the doctrine of equitable subrogation and its application in cases like this. As noted in Kala, if the sponsors are absolved of liability, "and yet left to bear the financial responsibility for the plaintiffs' loss after being found not at fault, the result would be highly inequitable, and the true wrongdoers would be unjustly enriched. It is precisely this result that the doctrine of equitable subrogation was fashioned to remedy." Kala Invs., Inc. v. Sklar, 538 So.2d at 919.
The public policy reflected from the inception of this doctrine mandates the promotion of the ends of justice by applying equity and good conscience to the peculiar facts of each individual case. This case in particular allows an eleemosynary application of a doctrine founded on what our judicial system is all aboutjustice.[2] Accordingly, with the exception of the issue requiring remand, we affirm the judgment below finding that the sponsors are entitled to equitable subrogation based on their payment of sums which should have been paid by DCSB. See Brickell Biscayne Corp. v. Morse/Diesel, Inc., 683 So.2d 168 (Fla. 3d DCA 1996).
Affirmed; remanded with instructions.
SHEVIN, J., concurs.
COPE, Judge (dissenting).
I respectfully dissent. The Dade County School Board is entitled to a new trial.
In this case the liability insurer for the organizers of the Three Kings Day Parade is seeking to shift its insurance loss to the Dade County School Board.
The School Board has clearly demonstrated that the summary judgment entered *705 against it on the issue of contractual liability is erroneous and must be reversed.
The final judgment cannot be affirmed on the basis of equitable subrogation. First, the issue was never pled or presented to the jury. Second, on the merits, Three Kings' insurer has no right to recover anything from the School Board because the School Board has a complete defense to the equitable subrogation claim.

I.
Within its adult education activity, the Dade County School Board operates the Office of Vocational, Adult, Career and Community Education (OVACCE). In order to recruit students for the adult education program, OVACCE in 1990 had an advertising budget of $367,000. John Moffi was the OVACCE employee in charge of purchasing advertising.
The annual Three Kings Day Parade is sponsored by nominal appellees Three Kings Parade, Inc., Radio Station WQBA, Susquehanna Broadcasting Co., and the City of Miami (collectively, "Three Kings").
In late 1989, WQBA employee Lourdes Peters contacted Moffi and offered to sell him an advertising package for the Three Kings Day Parade. The advertising options were explained in a document entitled "WQBA Three Kings Day Parade special event offer." Moffi testified that he wanted to purchase an advertising package because:
The Three Kings Parade is one of the largest Hispanic events that this county has during any year. And it was my opinion that in trying to start a new advertising campaign and exposure was something that you genuinely needed, this would be a wonderful opportunity to have that exposure. The audience is tremendous and knowing that 48 percent of the entire population in Miami Metro is Hispanic, it's a natural place to be.
[R. 2798].
Moffi purchased advertising Package B at a price of $5,000. The package provided five 10-second radio promotional announcements daily, five live mentions on the radio on the day of the parade, and one hundred 30-second commercials. OVACCE would be designated the "sponsor" of a high school band, which would be selected by Three Kings. The high school band would carry two banners for the advertiser, in this case OVACCE. [R. 3027-28, 2976]. The main reason Moffi bought the package was the radio spots. The banners to be carried by the marching band were an added plus. [R. 2753].
It was understood that Three Kings would choose the marching band which would carry the OVACCE banners. [R. 2971]. OVACCE did not express any preference regarding which band should be selected. [R. 2784-87]. Moffi's only request was for Three Kings to place the OVACCE banners as close to the front of the parade as possible because Moffi wanted the greatest exposure possible for OVACCE's money. [R. 2787].
WQBA's Lourdes Peters selected Miami Senior High School to carry the OVACCE banner. [R. 2789]. OVACCE has no relationship with Miami Senior High School. [R. 2795]. OVACCE's work does not impact or affect Miami Senior High.
In preparing for the Three Kings Day Parade, the Miami Senior High School marching band decided that their majorettes should use flaming batons, which they had done in past band competitions. As the band neared the judging area, a majorette's baton went out and had to be reignited. In doing so, the student assistant inadvertently ignited a can of flammable liquid. Another student kicked the can away, which went into the crowd and severely burned several spectators.
The injured plaintiffs brought suit for personal injury against the Three Kings entities, and the Dade County School Board. As a condition of allowing the Three Kings Day Parade, the City of Miami required Three Kings to carry liability insurance. The liability insurer paid substantial settlements to the injured plaintiffs. These payments were, with two exceptions, made on behalf of the Three Kings entities, but not on behalf of the *706 School Board.[1] The settlements between the injured plaintiffs and the Three Kings entities allowed the plaintiffs to pursue their claims against the School Board. Ultimately the School Board also paid settlements to the injured plaintiffs.
Having paid settlements on behalf of the Three Kings entities, the Three Kings' liability insurer stepped into the Three Kings' shoes. The liability insurer (in the name of Three Kings) sued the School Board for contractual indemnity and common law indemnity. No claim for equitable subrogation was made.
The trial court entered summary judgment in favor of Three Kings on contractual indemnity, holding that a "Participation Agreement" signed by OVACCE created a legal obligation for the School Board to indemnify Three Kings for the actions of the Miami Senior High School band. On contractual indemnity, the only issue considered at trial was damages.
The Three Kings claim for common law indemnity also proceeded to trial. In answer to a special interrogatory, the jury found that there was no special relationship between the School Board and the relevant Three Kings entities. This finding was fatal to the claim for common law indemnity.
Final judgment was entered in favor of Three Kings for $2,035,000. This was necessarily based on the pretrial summary judgment in favor of Three Kings on contractual liability. The School Board has appealed.

II.
The School Board argues that the trial court erred by entering summary judgment in favor of Three Kings on the issue of contractual indemnity. For two reasons, the School Board is correct.

A.
The trial court erred by ruling that the contract was clear on its face and that the contract required the School Board to indemnify Three Kings for the actions of the marching band.
In reality the contract is ambiguous. When the record is read in the light most favorable to the School Board as the nonmoving party on summary judgment, Three Kings' motion for summary judgment should have been denied.
When Moffi purchased advertising Package B, he signed the Three Kings Day Parade Participation Agreement. This agreement was drafted by Three Kings and, of course, must be construed against it.[2]
The first half of the one-page document gave parade instructions. The agreement then stated:
Furthermore, we agree to defend and hold harmless the Parade
Organizing Committee, WQBA Radio Station, and the City of
Miami from any claim resulting from our participation and
actions during the Three Kings' Day Parade.
AGREED: /s/John C. Moffi TITLE Educational Specialist 
Dade County Public Schools (OVACCE) 
NAME OF COMPANY
(Emphasis added). This was followed by the address and telephone number for OVACCE. That is all that was on the form when Moffi signed it.
Subsequently, Three Kings designated the Miami Senior High School marching band as the band "sponsored" by OVACCE. At the bottom of the Participation Agreement, WQBA's Lourdes Peters wrote:
Band Marching (Miami High Sr.)
=================================================
Sponsorship 
PARTICIPATION APPROVALORGANIZING COMMITTEE
It is undisputed that the designation of Miami Senior High School was not on the form when Moffi signed it.
In the Participation Agreement OVACCE promised to indemnify the named entities "from any claim resulting from our participation and actions during the Three Kings' Day Parade."
The document is ambiguous. When the Agreement refers to "our participation and actions," whose participation is being referred *707 to? The School Board argued that the signatory is OVACCE, and the "participation" is the purchase of advertising. Three Kings argued that the signatory is the School Board (although Moffi had no authority to sign for the School Board)[3] and "participation" means the participation by the marching band.
Since the document is ambiguous, and since this was summary judgment, three important principles come into play. First, extrinsic evidence is admissible to interpret the Agreement. See Hurt v. Leatherby Insurance Co., 380 So.2d 432, 434 (Fla.1980); Avis Rent A Car System, Inc. v. Monroe County, 660 So.2d 413, 414 (Fla. 3d DCA 1995). Second, since this was a summary judgment proceeding, the record is read in the light most favorable to the School Board as the nonmoving party. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985); Stev-Mar, Inc. v. Matvejs, 678 So.2d 834, 837 (Fla. 3d DCA), rev. denied, 686 So.2d 576 (Fla.1996). Third, the Agreement was drafted by Three Kings and must be construed against Three Kings. See Hurt v. Leatherby Insurance Co., 380 So.2d at 434.
With those principles in mind, we turn to the testimony of John Moffi. Moffi testified that he was approached by WQBA's representative Peters, who offered advertising packages for sale. As Peters knew, Moffi's job was to buy advertising for OVACCE. Moffi purchased Package B for $5,000, consisting primarily of radio spot announcements. Peters knew that he signed on behalf of OVACCE, and his signature specifies OVACCE.
Moffi's testimony is also clear that he did not sign the form on behalf of Miami Senior High School. He had no connection with Miami Senior High School. This Agreement was given to Moffi as an advertiser. The Agreement was not an entry form for Miami Senior High School. Miami Senior High School was selected by Three Kings, and OVACCE had no control over that decision. Miami Senior High School's name was added to this Agreement form by Lourdes Peters after Moffi signed it.
Read in light of the testimony and surrounding circumstances, "our" means OVACCE, not the School Board at large and not the Miami Senior High School marching band. OVACCE signed on its own behalf as advertiser, but not on behalf of anyone else.
To make the point clearer, if this identical form had been signed by the ABC restaurant along the parade route, or the DEF automobile dealership, no one would accept the argument that the restaurant or the automobile dealership had agreed to indemnify the Three Kings for something that the marching band did. If the restaurant or the automobile dealership had been the "sponsor" that is, purchaser of advertising to be carried by the marching bandwe would instantly see the unreasonableness of Three Kings' position in this case. A "sponsor" was a purchaser of an advertising package, pure and simple.
By happenstance in this case the advertising purchaser is the School Board's adult education programOVACCEand the marching band is also under the jurisdiction of the School Board. The fact that OVACCE happens to be a School Board entity does not exempt the Three Kings from ordinary principles of contract analysis nor ordinary summary judgment principles. Read in the proper light, "our participation and actions during the Three Kings' Day Parade" refers to OVACCE's actions as advertiser. Read in that light, the School Board has no liability under this contract.
Given that OVACCE was an advertiser, what would be the legitimate scope of the indemnification agreement that OVACCE signed? Certainly the content of OVACCE's radio announcements was OVACCE's responsibility. If the ads were libelous or infringed copyright, OVACCE would be answerable. In addition, the record is clear that OVACCE created its own banner. If OVACCE had installed pyrotechnics on its own banner, or used a highly flammable substance to make the banner, then certainly OVACCE would be obligated to indemnify Three Kings for any harm OVACCE itself caused. For summary judgment purposes, *708 that is how the agreement had to be read. The Participation Agreement in this instance was executed by an advertiser. It was not the entry form for the marching band.[4]
The summary judgment in favor of Three Kings on this issue must be reversed and the cause remanded for trial or further appropriate proceedings.[5]

B.
For a second reason, the trial court erred by granting Three Kings' motion for summary judgment on contractual indemnity. In opposition to Three Kings' motion for summary judgment on this issue, the School Board argued in part that Moffi did not have the authority to enter into an indemnification agreement on behalf of the School Board. In support of this argument, the School Board filed the affidavit of Assistant Board Attorney Johnny Brown, which stated, in part:
2. I am employed by the Dade County School Board as an Assistant Board Attorney. My responsibilities include preparation and review of proposed contracts on behalf of the Dade County School Board. I am knowledgeable of the Florida Statutes and Rules of the Dade County School Board with respect to the authority of the School Board to enter into contracts. Pursuant to Fla.Stat. 230.22, the School Board constitutes the contracting agent for the District School System. Pursuant to Fla. Stat. 230.22 the School Board may, when acting as a body, make contracts.
3. Pursuant to School Board Rule 6Gx13-3F-1.01, the Dade County School Board has directed that all contracts involving expenditure of tax funds, as well as other contracts of such nature that a prudent business man would consult an attorney, be submitted to the Board Attorney for drafting or approval as to form and to determine if such contracts meet all relevant and applicable legal requirements as to form and content.
4. I have reviewed the Three Kings Day Parade Participation Agreement signed by John Moffi, attached hereto as Exhibit "1". This agreement was not submitted to the Dade County School Board Attorney's Office for approval. I am not aware of any authority Mr. Moffi had pursuant to Fla.Stat. and School Board Rules to enter into this agreement. Accordingly, Mr. Moffi had absolutely no authority to enter into an indemnification and/or hold harmless agreement on behalf of the Dade County School Board. Only the Dade County School Board has such authority.
The School Board affidavit is consistent with subsection 230.22(4), Florida Statutes (1989), which designates the School Board as the entity having authority to enter into contracts:
(4) CONTRACT, SUE, AND BE SUED.The school board shall constitute the contracting agent for the district school system. It may, when acting as a body, make contracts, also sue and be sued in the name of the school board; provided, that in any suit, a change in personnel of the school board shall not abate the suit, which shall proceed as if such change had not taken place.
(Emphasis added).
In Club on the Bay, Inc. v. City of Miami Beach, 439 So.2d 325 (Fla. 3d DCA 1983), this court quoted with approval a trial court's conclusion that:
Entrepreneurs who do business with or contract with a municipality must at their peril inquire as to the power of the municipality and its officers to make contracts and they are bound to ascertain the nature and extent of the authority of any municipal agent. Entrepreneurs who deal with a municipality are required to know the limits of authority and as a matter of law, estoppel is not usually available to such entrepreneurs.
*709 Id. at 327 (emphasis added). That logic is applicable here.
As stated in section II.A. supra, the Three Kings agreement did not apply to the actions of the marching band. Assuming arguendo that the agreement actually did cover the band, then it was necessary for Three Kings to obtain the approval of the School Board itself on any indemnity contract. As this case illustrates, an indemnity against tort liability creates the potential for substantial claims against the School Board. Plainly such a liability can be undertaken only by the School Board itself, or an employee who has specifically been granted appropriate authority. It is not the type of undertaking to which an ordinary employee can bind the School Board. At the very least this was an issue which precluded entry of summary judgment in Three Kings' favor on the issue of contractual indemnity.

III.
Three Kings next argues that the final judgment should be affirmed on the theory of equitable subrogation, a claim never pled in the trial court or argued to the jury.[6] Three Kings is not entitled to recover anything on an equitable subrogation theory.

A.
Three Kings' lawsuit against the School Board was based on two claims: (1) contractual indemnity, and (2) common law indemnity. On the common law indemnity claim, the jury was asked to make a finding whether "a special relationship exist[ed] between RADIO STATION WQBA and CITY OF MIAMI, as parade sponsors, and DADE COUNTY SCHOOL BOARD, whereby the parade sponsors are technically, derivatively, or vicariously responsible for any negligence of DADE COUNTY SCHOOL BOARD?" The jury answered "no."
On this appeal, Three Kings contends that it is entitled to common law indemnity notwithstanding the jury finding. I concur with the majority opinion in rejecting Three Kings' argument on this point.
Recognizing the difficulties with their common law indemnity claim, Three Kings makes the alternative argument that the judgment should be sustained on a theory of equitable subrogation.
As explained below, Three Kings is not entitled to any relief on that theory either.

B.
First, Three Kings' new claim for equitable subrogation should be rejected because it was never pled in the trial court or tried to the jury. The essence of due process is notice and the opportunity to be heard. Three Kings' effort to raise a new cause of action for the first time after verdict should be rejected.
As stated by the Florida Supreme Court:
It is our view that a procedure which allows an appellate court to rule on the merits of a trial court judgment and then permits the losing party to amend his initial pleadings to assert matters not previously raised renders a mockery of the "finality" concept in our system of justice. Clearly, this procedure would substantially extend litigation, expand its costs, and, if allowed, would emasculate summary judgment procedure.

[Dober v. Worrell, 401 So.2d 1322, at 1324 (Fla.1981)] (emphasis added).
This policy is reiterated throughout this state's precedent. In Citizens National[Bank v. Youngblood, 296 So.2d 92 (Fla. 4th DCA 1974) ], for instance, the plaintiff had pled a breach of agreement but had based its evidence at trial entirely on failure to sell stock in a commercially reasonable manner. 296 So.2d at 94. Thus, the Fourth District found that the trial court as a matter of law should have directed a verdict for the defendant. Id.

The case of Dean Co. [v. U.S. Home Corp.], 485 So.2d [438,] at 438 [(Fla. 2d DCA 1986)], involved a third-party defendant who defended an action for indemnification but was found liable at the *710 conclusion of trial for a fifty percent "contribution." Finding the theories of indemnification and contribution entirely different, the Second District held that the cause of action against the third-party defendant must be dismissed on remand. Id. at 440.
In Designers Tile [International Corp. v. Capitol C Corp.], 499 So.2d [4,] at 4 [(Fla. 3d DCA 1986)], the plaintiff had presented its entire case under a theory of negligent hiring. The trial court, however, had permitted it to amend its complaint at the close of all evidence to include an action for vicarious liability. There had been no evidence to support the negligent hiring claim. On these facts, the Third District ordered the complaint dismissed. Id. at 5-6.
In Freshwater [v. Vetter], 511 So.2d [1114,] at 1114, [(Fla. 2d DCA 1987)], the cause had proceeded to trial under a theory that a corporation was the alter ego of the defendant, but the plaintiff had failed to present any evidence on this point. The trial court directed a verdict in favor of the defendant on this question, but then permitted the plaintiff to amend his complaint to include a personal fraud allegation. On these facts, the Second District held that the fraud count must be dismissed on remand. Id. at 1115.
... In this case, Bowmar did not prove the allegation of the counterclaim, but rather proved a claim not pled with sufficient particularity for Arky, Freed to prepare a defense. Under our law, Bowmar is thus precluded from recovery on this essentially unpled claim.
....
For the same policy reasons underlying Dober, we conclude that litigants at the outset of a suit must be compelled to state their pleadings with sufficient particularity for a defense to be prepared.... We... approve the opinions in Freshwater, Designers Tile, Dean Co. and Citizens National.

Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A., v. Bowmar, 537 So.2d 561, 562-63 (Fla.1988) (some emphasis in original; some emphasis added); cf. Wagner v. Nottingham Assoc., 464 So.2d 166, 170 (Fla. 3d DCA 1985) (defenses must be raised in trial court by appropriate procedure in order to be considered on appeal.)
Three Kings argues, however, that this court's decision in Kala Investments, Inc. v. Sklar, 538 So.2d 909 (Fla. 3d DCA 1989), allows a litigant to raise a new claim for equitable subrogation on appeal, even though it was not raised in the trial court. Three Kings misreads that case.
In Kala Investments, Kala was the owner of a multistory apartment building. It was sued after a child fell through a fourth-story screened window. The lawsuit claimed that the window and screen did not comply with the building code. Kala cross-claimed and third party claimed against the original owner, architect, general contractor, and window manufacturer. Id. at 912. The trial court entered summary judgment against Kala, and Kala appealed. This court ruled that the summary judgment had to be reversed as to most of the cross-claim and third party defendants because there was a factual issue about whether the window defect was patent or latent. Id. at 916. Having decided that summary judgment had been erroneously entered on the patent/latent issue, this court went on to explain that Kala's proper remedy on remand was a claim for equitable subrogation. Id. at 917-19. The case was remanded with directions to allow Kala and its insurer to amend their cross-claims and third party claims "to request relief by way of equitable subrogation." Id. at 919.
Kala Investments, therefore, involved a reversal of a summary judgment and a remand for further proceedings. On remand Kala was allowed to amend to assert an equitable subrogation claim. Once Kala amended, the cross-claim and third party defendants would have clear notice of the equitable subrogation claim and would have a fair opportunity to defend against it.
In the present case, by contrast, Three Kings is attempting to justify the affirmance of an erroneous final judgment by invoking an equitable subrogation cause of action which was never appropriately pled in the trial court, and which the School Board never *711 had a proper chance to defend against. The Kala Investments case does not support such a procedure, and the Wagner and Arky, Freed case prohibits such a procedure.
Three Kings also relies on West American Insurance Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986). In that case the Fifth District allowed an equitable subrogation theory to be raised for the first time on appeal. Id. at 207. The Fifth District found that the equitable subrogation issues had been actually tried by the parties. Id. at 207. Since the issues had actually been tried, the court reasoned that there was no prejudice by entertaining the equitable subrogation argument for the first time on appeal. Id.
Assuming arguendo that West American is correctly decided, that case has no application here. Here the equitable subrogation issue was never tried in the trial court.

C.
On the merits, the School Board has a complete defense to Three Kings' claim. Under the theory of equitable subrogation, once Three Kings paid settlements to the injured plaintiffs, this allowed Three Kings to step into the shoes of the injured plaintiffs. See generally Kala Investments, 538 So.2d at 917. Under Three Kings' approach, Three Kings is now pursuing the injured plaintiffs' claims against the School Board.
The problem with Three Kings' position is that the injured plaintiffs all released their claims against the School Board, pursuant to settlements. The individual plaintiffs' claims have all been extinguished.
When Three Kings steps into the shoes of the injured plaintiffs, Three Kings gains only those rights which the injured plaintiffs have. See Cleary Bros. Constr. Co. v. Upper Keys Marine Constr., Inc., 526 So. 2d 116, 117 (Fla. 3d DCA 1988); see also Sutton v. Ashcraft, 671 So 2d 301, 303 (Fla. 5th DCA 1996); 12 Fla. Jur. 2d Contribution § 38 (1979).
By the time Three Kings stepped into the injured plaintiff's shoes, the shoes were empty. Three Kings cannot initiate new lawsuits against the School Board based on personal injury claims the injured plaintiffs already settled. Three Kings "did not buy a different pair of shoes, nor could it turn [the injured plaintiffs'] shoes into a different type of footwear." Sutton v. Ashcraft, 671 So. 2d at 301; see also High v. General Am. Life Ins. Co., 619 So 2d 459, 461 (Fla. 4th DCA 1993).
If Three Kings had amended its complaint to assert personal injury actions in the name of the injured plaintiffs against the School Board, the School Board would have pled the defenses of accord and satisfaction, and release.[7] The School Board would have been entitled to summary judgment. Three Kings' equitable subrogation argument has no more merit in this appeal than it would have had in the trial court.
There is no basis for Three Kings' equitable subrogation claim. The final judgment cannot be affirmed on that theory.

IV.
I concur that the School Board is protected by the statutory sovereign immunity cap set forth in subsection 768.28(5), Florida Statutes (1989). Further, since in equitable subrogation Three Kings steps into the shoes of the original plaintiffs, it follows that the School Board is entitled to credit against the statutory cap for all sums it already paid to the original plaintiffs in settlement.
I agree with the portion of the majority opinion which states that the trial court must "strike the language `for which sum let execution issue' in the final judgment." Majority opinion at 703. A plaintiff who wins a judgment against a governmental entity enforces the judgment by compelling the governmental entity to issue a payment check. This is done by filing a petition for writ of mandamus addressed to the appropriate governmental *712 officers. See State Road Dept. v. Bankers Life & Casualty Co., 166 So.2d 234, 235 (Fla. 3d DCA 1964). Thus:
Statutes waiving sovereign immunity generally do nothing more than refer the settlement of the questions involved to the judiciary, authorizing it to determine, in the form of a judgment, the rights of the parties. They imply that the legislature or other appropriate body will recognize the judgment and make provision for its satisfaction but, in the event of a refusal to pay, they do not authorize a seizure of public property to satisfy a judgment. Hence, an execution normally may not be issued on a judgment against the state or one of its subdivisions, nor may it be levied against property belonging to any such entities. However, the courts are not impotent as regards enforcement of their money judgments against agencies or subdivisions of the state, and a trial judge has inherent power to direct a post-judgment order to such an entity requiring its issuance of the necessary voucher or other authorization to the appropriate public official for payment of a judgment rendered against it, at least where that entity has funds available.
28 Fla.Jur.2d Government Tort Liability § 61, at 223-24 (1981) (footnotes omitted; emphasis added); State ex rel. Davis v. Love, 99 Fla. 333, 126 So. 374, 380 (1930) (Statutes waiving sovereign immunity "`do not authorize a seizure of state property to satisfy judgments recovered....'"). The phrase "let execution issue" should not have been included in the final judgment.

V.
The majority opinion suggests that affirmance of this judgment promotes the interests of fairness and justice. I respectfully disagree. As matters stand now, the School Board has been held liable under a contractual Participation Agreement on which there was an erroneous summary judgment. There has never been a fair hearing regarding the scope of that agreement. It defies all logic to suggest that purchasers of radio advertising packages are thereby agreeing to indemnify the parade sponsors (more particularly its insurer) for the actions of marching bands who carry advertisers' banners. Furthermore, the School Board is not bound by the indemnity clause because the School Board never approved it.
Similarly, the equitable subrogation theory has no application to this case at all. It is neither fair nor just to consider this issue after verdict, where the School Board never had notice or the opportunity to defend against the claim in the trial court. In any event, it is certain that Three Kings has no right to recover on equitable subrogation. The School Board would have been entitled to summary judgment on that issue if it had been presented in the trial court.[8]
Fairness can be looked at in another way in this case. The parade is financed by the sale of sponsorships. In order to have the parade, the parade's sponsors had to provide a liability insurance policy. It is a fair inference that the sponsorship fees paid by the sponsors collectively (including OVACCE) provided the source of funds which paid for the liability insurance policy in this case. The insurer is in the business of writing insurance, for which it presumably makes a profit. The tragic accident which happened in this case is precisely the type of incident the insurance policy was intended to cover. To the extent that equities may be involved in this case, the equities do not tip in favor of the insurer.
The final judgment should be reversed and the cause remanded for further proceedings on the issue of contractual indemnity.

APPENDIX

Super Q fm 107.5

THREE KINGS DAY PARADE

PARTICIPATION AGREEMENT
The undersigned agrees, as condition to participate in the 19th Annual Three Kings' Day Parade, Sunday, January 8, 1990, to:
*713 1. OBEY ALL INSTRUCTIONS GIVEN BY PARADE OFFICIALS, MARSHALLS, AND THE MIAMI POLICE.
2. NOT THROW, HAND OUT, OR IN ANY OTHER WAY DISTRIBUTE ANY MATERIAL DURING THE PARADE.
3. USE THE SIGNS PROVIDED BY THE PARADE ORGANIZING COMMITTEE FOR IDENTIFICATION PURPOSES.
4. BE AT THE ASSEMBLY POINT DESIGNATED FOR OUR UNIT NO LATER THAN 11:00 AM ON SUNDAY, JANUARY 7, 1990.
We understand and agree that if we do not comply with the rules of the parade, and the instructions given to us by parade marshalls, officials, or the Miami Police, our participation in the parade will be terminated and we will not be permitted to continue in the parade.
Furthermore, we agree to defend and hold harmless the Parade Organizing Committee, WQBA Radio Station, and the City of Miami from any claim resulting from our participation and actions during the Three Kings' Day Parade.
AGREED: /s/John C. Moffi TITLE Educational Specialist 
Dade County Public Schools (OVACCE) 
NAME OF COMPANY
1450 NE 2nd Ave #868 995-1822 
ADDRESS OF COMPANY TELEPHONE
Band Marching (Miami High Sr.)
==============================================================
Sponsorship 
PARTICIPATION APPROVALORGANIZING COMMITTEE
______________________________________________________________
DATE SUBMITTED DATE APPROVED
 Parada de los Reyes Magos
 WQBA-FM
2828 Coral Way * Miami, Florida 33145 * (305) 441-2073 * FAX (305) 445-8908
NOTES
[1] We disagree with the dissent's argument that equitable subrogation cannot be invoked because it was never pleaded in the trial court. The record clearly supports a cause of action for equitable subrogation. As succintly stated by the reasoning of the Fifth District in West American Ins. Co. v. Yellow Cab Co., which allowed a subrogation theory to be raised for the first time on appeal:

"In the instant case, a cause of action for legal subrogation was fully supported by the evidence presented at trial. To protect itself, and not as a volunteer, West American as insurer paid a debt in full which in equity should have been paid by Yellow Cab. The jury found that the payment was reasonable and that Yellow Cab was 100% at fault. Not permitting recovery in this case because West American was found not to be at fault for the accident produces an inequitable and absurd result and would unjustly enrich Yellow Cab. All the elements of subrogation were tried. Only the pleading was missing, and Rule 1.190(b) removes that omission as a barrier to recovery here."
West American, 495 So.2d at 207.
Similarly, in Kala Invs., Inc. v. Sklar, 538 So.2d at 909, this court invoked equitable subrogation even though the doctrine had been raised for the first time in the appellant's reply brief because the cause of action was supported by the record and no prejudice would be suffered by the codefendants since the subrogation claim was not based on new facts and was identical to the appellant's contribution and indemnity claims. Kala, 538 So.2d at 918-19 n. 8. See Transport Int'l Pool, Inc. v. Pat Salmon & Sons of Florida, Inc., 609 So.2d 658 (Fla. 4th DCA 1992)(applying doctrine of equitable subrogation on appeal even though not raised in trial court).
Florida courts which have considered the doctrine of equitable subrogation when raised for the first time on appeal, have obviously applied the doctrine to the appellate analysis of the case in reaching a conclusion. See Transport International Pool, Inc. v. Pat Salmon & Sons of Florida, Inc., 609 So.2d at 658; Kala Invs., Inc. v. Sklar, 538 So.2d at 909 West American Ins. Co. v. Yellow Cab Co., 495 So.2d at 204.
Here, even though the sponsors did not technically label their claim below as one for "equitable subrogation," clearly they sought reimbursement for monies paid in settlement of the plaintiffs' claims because it was the DCSBnot the sponsorswho were actually responsible for the plaintiffs' various personal injuries. Although the dissent correctly cites the law, its application of the cited law to the facts of this case misses the mark.
[2] The dissent disagrees that our affirmance of the judgment in favor of the sponsors is fair. However, the jury indisputably found DCSB to be negligent and completely absolved the sponsors. The jury found it fair to hold DCSB responsible. That is what juries are for. We see no reason for an appellate court to supplant the jury's finding.
[1] Three Kings asserts that in settling two plaintiffs' claims, for $25,000 and 20,000 respectively, Three Kings included the School Board in the releases procured from the settling plaintiffs.
[2] The agreement is reproduced as an appendix to this opinion.
[3] See section II.B. infra.
[4] If Three Kings desired to have an entry form and indemnity agreement executed on behalf of those who enter marching bands in the parade Three Kings could have so required. Three Kings evidently did not do so.
[5] The remand should be without prejudice to the School Board to move for summary judgment in the trial court. If Three Kings has any evidence to support its interpretation of the Participation Agreement, it has not suggested what that evidence might be.
[6] Three Kings first mentioned equitable subrogation in its post verdict motion to enter final judgment.
[7] There is also a procedural defense. In order to perfect an equitable subrogation claim, Three Kings would have had to give notice of its subrogation rights to the School Board. See National Surety Corp. v. Bimonte, 143 So.2d 709, 710 (Fla. 3d DCA 1962). We know that no such notice was given, because Three Kings concedes it did not mention the equitable subrogation theory until after the verdict.
[8] However, there is no requirement that the School Board show this court that it has a complete defense to the equitable subrogation claim. See Wagner, 464 So.2d at 170; Arky, Freed, 537 So.2d at 562-63. The School Board only needs to show the indisputable fact that the equitable subrogation claim was not pled or tried below.